MOLLIE MCALLISTER *et al.* v. J. P. FAIR, *as Adminis-*
*trator, etc., et al.*

No. 14,161.    (84 Pac. 112.)

SYLLABUS BY THE COURT.

DESCENTS AND DISTRIBUTIONS—*Murder of Ancestor by Heir—*
*Statutory Construction.* The power to declare the rule for
the descent of property is vested in the legislature; and
where it has provided in plain and peremptory language that
a husband shall inherit from his deceased wife, and no ex-
ception is made on account of criminal conduct, the court is
not justified in reading into the statute a clause disinheriting
a husband because he feloniously killed his intestate wife for
the purpose of acquiring her property.

Error from Jewell district court; RICHARD M. PICK-
LER, judge. Opinion filed January 6, 1906. Affirmed.

*R. W. Turner,* for plaintiffs in error.

*W. S. Canan, W. R. Mitchell,* and *S. H. Allen,* for de-
fendants in error.

The opinion of the court was delivered by

JOHNSTON, C. J.:   This was a proceeding begun in
the probate court to obtain a distribution of the estate
of Kate Brandt. She was killed by her husband on
March 14, 1903, for the purpose of obtaining her prop-
erty, and in a prosecution for the offense he was con-
victed of murder in the first degree and is now im-
prisoned in the penitentiary under a death sentence.
She had no children, and under ordinary and normal
circumstances her husband would inherit her estate.
She left a personal estate said to be worth about $1000,
and the husband assigned and transferred his interest
in it to G. A. Bailey, the attorney who defended him
against the criminal charge. Her brothers and sisters,
the nearest blood relatives living, claimed the estate,
alleging that the husband's crime disabled him from
taking any interest in it. In the probate court, and
also in the district court, to which the case was ap-

pealed, it was held that the husband was the only heir of his deceased wife; that her estate descended to him; and that Bailey was entitled to it under the assignment.

The plaintiffs complain, and insist that a murderer should not be permitted to inherit the estate of his victim. The descent and devolution of property is regulated by statute. Section 2521 of the General Statutes of 1901 provides: "If the intestate leave no issue, the whole of his estate shall go to his wife; and if he leave no wife nor issue, the whole of his estate shall go to his parents." Section 2529 provides: "All the provisions hereinbefore made in relation to the widow of a deceased husband, shall be applicable to the husband of a deceased wife. Each is entitled to the same rights or portion in the estate of the other, and like interests shall in the same manner descend to their respective heirs." Section 2532 provides that "the personal property of the deceased not necessary for the payment of debts, nor otherwise disposed of according to law, shall be distributed to the same persons and in the same proportions as though it were real estate." It is conceded that the statute is general and inclusive in its terms, but it is said to be inconceivable that the legislature intended to give an estate to a husband who murdered his wife to obtain it. It is argued that the letter of a statute should not prevail over its sense and spirit, and that a literal interpretation of the statute in question would in effect be giving property as a reward for crime. It is said that the legislature is presumed to have enacted the statute in question having in view the maxims of the common law that no man shall take advantage of his own wrong, or acquire property by his own crime, or use the law to accomplish his unlawful purposes, and, therefore, that the courts are justified in imputing a different intention to the legislature and excepting murderers from the operation of the statute.

These considerations would have great weight if

McAllister v. Fair.

there were ambiguity in the statute, or if it were the province of the court to settle the policy of the state with respect to the descent of property or as to the character and extent of punishment which should be inflicted for the commission of crime. That any one should be given property as the result of his crime is abhorrent to the mind of every right-thinking person, and is a strong reason why the lawmakers, in fixing the rules of inheritance and prescribing punishment for felonious homicide, should provide that no person shall inherit property from one whose life he has feloniously taken. A statute of this character has been enacted in at least one state. (Iowa Code, 1897, § 3386; *Kuhn v. Kuhn,* 125 Iowa, 449, 101 N. W. 151.) The horror and repulsion caused by such an atrocity, however, do not warrant the court in reading into a plain statutory provision an exception which the statute itself in no way suggests. If the statute were of doubtful meaning and open to two constructions there might be room to infer that the legislature intended the one which would be most reasonable and just in its application. As will be observed, however, the rule of inheritance is explicit, and the statute contains no hint that any one is to be excluded on account of misconduct or crime.

In *Ayers v. Comm'rs of Trego Co.,* 37 Kan. 240, 15 Pac. 229, the court was asked to read into a statute a meaning which its words did not import, and the reply was made: "We have not the right to change the statute where it is clear and free from ambiguity, by any judicial interpretation." In the recent case of *Railway Co. v. Grain Co.,* 68 Kan. 585, 75 Pac. 1051, it was held that the fraud and misconduct of one party which prevented another from bringing an action did not create an implied exception to the statute of limitations; that, the legislature having made no exception on that ground, none could be made by the courts; that it was the duty of the courts to administer the law regardless of particular cases of hardship; that the

function of changing a law because it works unjustly or oppressively belongs to the legislature, and for a court to engraft an exception upon a statute would be judicial legislation.

The argument that a literal interpretation of the statute would in effect encourage crime and contravene public policy is no reason why the courts should disregard a plain statutory provision, nor would it justify them in determining the policy of the state upon the question. The right to determine what is the best policy for the people is in the legislature, and courts cannot assume that they have a wisdom superior to that of the legislature and proceed to inject into a statute a clause which, in their opinion, would be more in consonance with good morals or better accomplish justice than the rule declared by the legislature. It has been said that "the well-considered cases warrant the pertinent conclusion that when the legislature, not transcending the limits of its power, speaks in clear language upon a question of policy, it becomes the judicial tribunals to remain silent." (*Malinda Deem et al. v. Thomas Millikin et al.,* 6 Ohio C. C. 357, 360.)

The statute makes nearness of relationship to the decedent, and not the character or conduct of the heir, the controlling factor as to the right of inheritance. Besides, the penalties for felonious homicides are definitely prescribed in another statute, and the loss of the inheritable quality or the forfeiture of an estate is not among them. If the court should hold that the loss of heirship and the forfeiture of an estate were a consequence of Brandt's crime, it would have to ignore the legislative rule governing the descent of property, and would, in effect, impose a punishment for his crime in addition to that prescribed by the only body authorized to declare penalties for violations of law. Nor is it easy to attribute to the legislature an intention to take from a criminal the right to inherit as a consequence of his crime, since the constitution provides that no conviction shall work a corruption of blood or

McAllister v. Fair.

forfeiture of estate. (Bill of Rights, § 12; Gen. Stat. 1901, § 94.)

The cases relied on by plaintiffs in error as authorities against the right to inherit are those involving insurance policies, wills, and the like. (*Riggs et al. v. Palmer et al.,* 115 N. Y. 506, 22 N. E. 188, 5 L. R. A. 340, 12 Am. St. Rep. 819; *Ellerson v. Westcott,* 148 N. Y. 149, 42 N. E. 540; *Lundy v. Lundy,* 24 Can. S. C. 650; *N. Y. Life Ins. Co. v. Armstrong,* 117 U. S. 591, 6 Sup. Ct. 877, 29 L. Ed. 997; *Schmidt v. Northern L. Asso.,* 112 Iowa, 41, 83 N. W. 800, 51 L. R. A. 141, 84 Am. St. Rep. 323; *Box v. Lanier,* 112 Tenn. 393, 79 S. W. 1042, 64 L. R. A. 458.)

There is a manifest difference, however, between private grants, conveyances and contracts of individuals and a public act of the legislature. It might be that a person would not be permitted to avail himself of the benefits of an insurance policy the maturity of which had been accelerated by his felonious act. Many considerations of an equitable nature might affect the operation or enforcement of a grant or contract of a private person which would have no application or bearing on a statute enacted by the legislature. So far as the descent of property is concerned, the courts are practically unanimous in holding that all the power and responsibility rest with the legislature. They have spoken with one voice in opposition to the exclusion of an heir from taking an estate on account of crime, where the statute in plain terms designates him as one entitled to inherit.

In *Owens v. Owens,* 100 N. C. 240, 6 S. E. 794, the court had under consideration the question whether a wife who had been convicted of being accessory to the killing of her husband was disabled from taking the share of the estate left by the deceased which the statute gave to her. It was said:

"We are unable to find any sufficient legal grounds for denying to the petitioner the relief which she demands; and it belongs to the lawmaking power alone

to prescribe additional grounds for the forfeiture of the right, which the law itself gives, to a surviving wife.

"Forfeitures of property for crime are unknown to our law, nor does it intercept for such cause the transmission of an intestate's property to heirs and distributees, nor can we recognize any such operating principle." (Page 242.)

In *Carpenter's Estate*, 170 Pa. St. 203, 32 Atl. 637, 29 L. R. A. 145, 50 Am. St. Rep. 765, it was held that a son who murdered his father for the purpose of securing the father's estate was entitled to take the estate under the intestate laws, and that his crime did not destroy his right of inheritance. Among other things the court remarked:

"The legislature has never imposed any penalty of corruption of blood or forfeiture of estate for the crime of murder, and therefore no such penalty has any legal existence. . . . The intestate law in the plainest words designates the persons who shall succeed to the estates of deceased intestates. It is impossible for the courts to designate any different persons to take such estates without violating the law. . . . It is argued however that it would be contrary to public policy to allow a parricide to inherit his father's estate. Where is the authority for such a contention? How can such a proposition be maintained when there is a positive statute which disposes of the whole subject? How can there be a public policy leading to one conclusion when there is a positive statute directing a precisely opposite conclusion? In other words when the imperative language of a statute prescribes that upon the death of a person his estate shall vest in his children in the absence of a will, how can any doctrine, or principle, or other thing called public policy, take away the estate of a child and give it to some other person? The intestate law casts the estate upon certain designated persons, and this is absolute and peremptory, and the estate cannot be diverted from those persons and given to other persons without violating the statute. There can be no public policy which contravenes the positive language of a statute." (Page 208.)

In *Malinda Deem et al. v. Thomas Millikin et al.,* 6

Ohio C. C. 357, it was held that "the statute of descents provides in clear terms that where one dies intestate and seized in fee of lands, they shall descend and pass to the children of such intestate; and the courts cannot, upon considerations of policy, so interpret the statute as to exclude from the inheritance one who murders such intestate." (Syllabus.) This decision was affirmed by the supreme court of Ohio upon the reasons given by the circuit court. (53 Ohio St. 668, 44 N. E. 1134.)

In *Shellenberger v. Ransom,* 41 Neb. 631, 59 N. W. 939, 25 L. R. A. 564, the supreme court of Nebraska first held that one who killed an ancestor could not share in an estate (31 Neb. 61, 47 N. W. 700, 10 L. R. A. 810, 28 Am. St. Rep. 500), but upon a rehearing and a fuller consideration the court changed its position and declared that where the statute of descents contains no exception on account of crime the courts can add none. In determining the question the court, at page 643, quoted approvingly from *Bosley v. Mattingly,* 53 Ky. (14 B. Mon.) 89, 90, as follows:

"When the law is clear and explicit, and its provisions are susceptible of but one interpretation, its consequences, if evil, can only be avoided by a change of the law itself, to be effected by legislative, and not judicial, action."

In meeting the suggestion that to allow a person to gain property by intentional homicide is shocking to the senses, and that the legislature would necessarily have shared in a feeling of abhorrence against such a rule if they had given it attention when the act was passed, the court remarked:

"This is no justification to this court for assuming to supply legislation, the necessity for which has been suggested by subsequent events, but which did not occur to the minds of those legislators by whom our statute of descent was framed. Neither the limitations of the civil law nor the promptings of humanity can be read into a statute from which, without question, they are absent, no matter how desirable the result to be attained may be." (Page 644.)

In the case of *Kuhn v. Kuhn*, 125 Iowa, 449, it was contended that public policy forbids a party from deriving advantage from a criminal act, but the answer made by the supreme court of Iowa was:

"The public policy of a state is the law of that state as found in its constitution, its statutory enactments, and its judicial records. (*People v. Hawkins*, 157 N. Y. 12, 51 N. E. 257, 42 L. R. A. 490, 68 Am. St. Rep. 736.) And when such policy, touching a particular subject, has been declared by statute, as in this case, it is limited by such statute, and the courts have no authority to say that the legislature should have made it of wider application." (Page 453.)

In *Box v. Lanier*, 112 Tenn. 393, which is cited as an authority against the husband's right to inherit, there was a contest over the proceeds of an insurance policy, and, while it was held that the husband who feloniously killed his wife was incapacitated to take her choses in action, it was determined upon the rules of the common law, and not upon a statute of descents. The majority of the court recognized that the weight of authority, as well as the better legal reasoning, supported the view that an unqualified statute casting descent should be given effect, and in the opinion it was said:

"For it may be true that it would be a stretch of judicial authority to hold that an unambiguous statute providing a line of devolution of property should be interpreted to mean that this line was to be broken upon the felonious homicide of the ancestor or testator by the one next in succession." (Page 407.)

The court then proceeded to determine that no statute existed in the state governing the devolution of property in such cases, and based its judgment on common-law principles entirely. (See, also, 41 Cent. L. J. 377.)

Although a theory cutting a murderer out of any benefits resulting from his crime appeals to the court's sense of justice, it cannot be overlooked that the legislature has the power to declare a rule of descents; it

has done so in language that is plain and peremptory, and no rule of interpretation would justify the court in reading into the statute an exception or clause disinheriting those guilty of crime.

The judgment of the district court is affirmed.

All the Justices concurring.