Williams, J.,
 

 dissenting. Apóstol Milvanos and his nephew entered into a written contract of deposit with the West Side Building and Loan Company, Dayton, Ohio, creating a joint survivorship account. There was immediately credited to the account about $10,000 which represented the life savings of the uncle. No claim is made that the deposit was special; in fact it is undisputed that it was general in nature and therefore created the relation of debtor and creditor between the bank and the depositors. The nephew was an accomplice in the murder of his uncle and was convicted as being the moral author of that crime. After-
 
 *440
 
 wards Nick Oleff was appointed administrator of the decedent’s estate, and the building and loan company then paid the full amount of the deposit to such administrator as assets of the estate upon bond being given the company to save it harmless from loss. A petition was thereupon filed in the Probate Court of Montgomery county by the administrator to determine heirship, and Dale Hodapp, as resident guardian of the nephew, filed a cross-petition setting up that the account was what is known as a joint survivorship account and that under the contract of deposit the nephew as survivor was entitled to the whole, amount, and concluding with a prayer that the fund be declared to be his property and “for all other relief in law or equity” to which he might be entitled. Helen Milvanos filed an answer alleging she was the widow of the uncle and that the nephew and a conspirator had killed the uncle. Upon trial evidence was adduced to show that the uncle was murdered by one Diskos and the latter was instigated to commit the crime by the persuasion and importunity of the nephew. The Probate Court found that the money was assets of the decedent’s estate and should be distributed according to the laws of Greece. Other facts appear in the majority opinion.
 

 There is no statute in Ohio that is controlling, as Section 10503-17, General Code, became effective subsequent to the death of plaintiff in error’s decedent.
 

 A searching investigation has failed to reveal any case covering the precise point under consideration except
 
 In re Santourian’s Estate,
 
 212 N. Y. S., 116. In that case the surrogate court held that a husband who killed his wife was not entitled to money on deposit in a joint survivorship account authorized by a statute similar to the one in this case. The decision was based upon
 
 Riggs
 
 v.
 
 Palmer,
 
 115 N. Y., 506, 22 N. E., 188, 5 L. R. A., 340, 12 Am. St. Rep., 819, and
 
 Van Alstyne
 
 v.
 
 Tuffy,
 
 169 N. Y. S., 173, 103 Misc., 455.
 
 *441
 
 In the former of those two cases the court lays down the principle that a murderer cannot take, either as heir or legatee, the estate of one whom he has murdered for the purpose of obtaining the property; in the latter it was held that the heirs of a murderer could not inherit property where a husband and wife held real estate as tenants by the entirety, and the husband murdered his wife and then committed suicide.
 

 In my judgment the instant case is controlled by the principle announced in
 
 Filmore
 
 v.
 
 Metropolitan Life Ins. Co.,
 
 82 Ohio St., 208, 92 N. E., 26, 137 Am. St. Rep., 778, 28 L. R. A. (N. S.), 675, in which it is held that a beneficiary in a life insurance policy who intentionally and feloniously kills the insured cannot recover on the contract of insurance. In the opinion in that case appears the following: “And as said by Mr. Justice Field, in
 
 N. Y. Mut. Life Ins. Co.
 
 v.
 
 Armstrong,
 
 117 U. S., 600: ‘It would be a reproach to the jurisprudence of the country if one could recover insurance money payable on the death of a party whose life he had feloniously taken. As well might he recover insurance money upon a building that he had wilfully fired.’ In the case of
 
 Schreiner
 
 v.
 
 High Court of Illinois Catholic Order of Foresters,
 
 35 Ill. App., 576, cited and relied upon by counsel for plaintiff in error as supporting their contention in the present case, the court also clearly recognizes the principle applicable to all contracts of insurance, that the insured or beneficiary cannot under such contract receive indemnity for a loss that he himself has intentionally brought about, the second paragraph of the syllabus in that case being as follows: ‘ There can be no recovery in an action founded upon intentional wrong. The beneficiary in an insurance policy cannot recover where the death of assured has been intentionally caused by his act.’ ”
 

 The rule seems to be universally recognized that the murderer of the insured cannot take as beneficiary under a policy on the life of the insured.
 
 Smith
 
 v.
 
 *442
 

 Todd,
 
 155 S. C., 323, 152 S. E., 506, 70 A. L. R., 1529, annotation at page 1539.
 

 The next step is to inquire why this principle applies in the instant case and in doing so it is necessary to analyze analogous cases.
 

 There is a distinction that should constantly be borne in mind. A marked difference exists between cases arising out of public acts of the Legislature on the one hand and those arising out of private grants, and contracts between individuals, on the other. Under the former class would come all cases involving heir-ship dependent upon the statutes of descent and distribution. Under the latter would come cases involving wills, conveyances by deed, contracts of insurance and the like. Cases involving joint tenancies and tenancies by the entirety are more difficult of classification but would seem to stand on a footing somewhat different from either of the two classes mentioned.
 

 The distinction referred to is made plain in
 
 McAllister
 
 v.
 
 Fair,
 
 72 Kan., 533, 84 P., 112, in this language: “The cases relied on by plaintiffs in error as authorities
 
 against the right to inherit are those involving insurance policies, wills, and the like. (Riggs et al.
 
 v.
 
 Palmer et al.,
 
 115 N. Y, 506, 22 N. E., 188, 5 L. R. A., 340, 12 Am. St. Rep., 819;
 
 Ellerson
 
 v.
 
 Westcott,
 
 148 N. Y., 149, 42 N. E., 540;
 
 Lundy
 
 v.
 
 Lundy,
 
 24 Can. S. C., 650;
 
 N. 7. Life Ins. Co.
 
 v.
 
 Armstrong,
 
 117 U. S., 591, 6 Sup. Ct., 877, 29 L. Ed., 997;
 
 Schmidt
 
 v.
 
 Northern L. Asso.,
 
 112 Iowa, 41, 83 N. W., 800, 51 L. R. A., 141, 84 Am. St. Rep., 323;
 
 Box
 
 v.
 
 Lanier,
 
 112 Tenn., 393, 79 S. W., 1042, 64 L. R. A., 458.)
 

 “There is a manifest difference, however, between private grants, conveyances and contracts of individuals and a public act of the legislature.
 
 It might be that a person would not be permitted to avail himself of the benefits of an insurance policy the máturity of which had been accelerated by his felonious act. Many considerations of -an equitable nature might affect the
 
 *443
 
 operation or enforcement of a grant or contract of a private person which, would have no application or bearing on a statute enacted by the legislature. So far as the descent of property is concerned, the courts are practically unanimous in holding that all the power and responsibility rest with the legislature. They have spoken with one voice in opposition to the exclusion of an heir from taking an estate on account of crime, where the statute in plain terms designates him as one entitled to inherit.” (Italics ours.)
 

 In view of what is later said herein it should be borne in mind that
 
 McAllister
 
 v.
 
 Fair
 
 was decided in 1906 and therefore nothing is found in the report of it regarding the trend of modern authority in applying the principle of the constructive trust.
 

 The joint survivorship account lacks the elements of a joint tenancy at common law. While a joint tenancy in real estate is not recognized in Ohio, the parallel remains. Joint tenants are seized “by the half or moiety, and by all” and one joint tenant cannot do any act that will injure or defeat the estate of the other. 2 Blackstone Commentaries, 182. Where a survivor of two joint tenants dies, the former, being seized of all, has a vested interest in the whole, both before and after survivorship. In the joint survivorship account involved either one might withdraw the whole of the deposit at any time while both were alive provided the other had not previously done so and was not then demanding withdrawal; there is no vested interest in the sense that there is in a joint tenancy. Each co-depositor had contractual relations with the banking institution and, the deposit being general, neither depositor had a right to any specific money.
 

 In
 
 Equitable Life Assur. Co.
 
 v.
 
 Weightman,
 
 61 Okla., 106, 160 P., 629, L. R. A. 1917B, 1210, a life insurance policy upon the lives of two persons was payable to the surviving beneficiary. It was held that the interest of the assured persons was not a joint tenancy. In the opinion it is said: “The interests of both could
 
 *444
 
 not be the same, and could not vest at the same time, for the vesting of one interest would terminate the expectancy and interest of the other; and the unities would necessarily be broken.”
 

 Neither co-depositor in the instant case had a right in the account that the other could not deprive him of by withdrawal during the lifetime of both.
 

 Where a husband and wife are seized of property as tenants by the entirety and husband murders his wife, it has been held that the legal title to the estate remains in him as the survivor but he becomes a constructive trustee for the benefit of his wife’s heirs.
 
 Bryant
 
 v.
 
 Bryant,
 
 193 N. C., 372, 137 S. E., 188, 51 A. L. R., 1100.
 

 It is held in many jurisdictions that an heir who murders his ancestor cannot be deprived of his inheritance for the reason that it is beyond the power of the courts to read something into the statutes of descent and distribution. There is a decision to this effect in Ohio.
 
 Deem
 
 v.
 
 Millihin,
 
 6 C. C., 357, 3 C. D., 491; affirmed without opinion in 53 Ohio St., 668, 44 N. E., 1134. However, the tendency to apply the principle of constructive trusteeship is shown in
 
 Bryant
 
 v.
 
 Bryant, supra.
 
 The constructive trust is referred to by Justice Oardozo in
 
 Beatty
 
 v.
 
 Guggenheim Exploration Co.,
 
 225 N. Y., 380, 386, 122 N. E., 378, as the “formula through which the conscience of equity finds expression.” It is the modern device resorted to in equity to prevent the murderer from profiting by his own crime, though acquiring an interest in property by his victim’s death. Plainly the drift of modern authority is in this direction and additional support is found in the following cases:
 
 Barnett, Admr.,
 
 v.
 
 Couey, Admr.,
 
 224 Mo. App., 913, 27 S. W. (2d), 757;
 
 Sherman
 
 v.
 
 Weber,
 
 113 N. J. Eq., 451, 167 A., 517.
 

 This wholesome doctrine is imbedded in our jurisprudence and has been frequently applied. It is thus stated in
 
 Moore
 
 v.
 
 Crawford,
 
 130 U. S., 122, 9 S. Ct.,
 
 *445
 
 447, 32 L. Ed., 878: “Whenever the legal title to property is obtained through means or under circumstances ‘which render it unconscientious for the holder of the legal title to retain and enjoy the beneficial interest, equity impresses a constructive trust on the property thus acquired in favor of the one who is truly and equitably entitled to the same, although he may never, perhaps, have had any legal estate therein; and a court of equity has jurisdiction to reach the property either in the hands of the original wrongdoer, or in the hands of any subsequent holder, until a purchaser of it in good faith and without notice acquires a higher right and takes the property relieved from the trust.’ Pomeroy Eq. Jur. § 1053. ’ ’
 

 There should be no hesitation in applying this principle to achieve the ends of justice where it is neces-' sary to do so. It seems, however, that neither the right to inherit nor the right to retain title to tangible property is involved in the record presented. At best the nephew gained a mere right of action by the murder of his uncle. If the constructive trust theory were applied the nephew would hold his right of action in trust for the distributees of the deceased. But it is not'necessary to apply that doctrine. The question is: Is the nephew to prevail on the cross-petition? The amount of the deposit is in the hands of the administrator of his deceased uncle.
 

 Another interesting line of cases arises where the legatee or devisee murders the testator. In such cases the rule is laid down that the legatee or devisee cannot take upon the theory that, though the will is valid, the legacy or devise fails.
 
 Riggs
 
 v.
 
 Palmer, supra; In re Wilkins’ Estate,
 
 192 Wis., 111, 211 N. W., 652. Other authorities may be found in 68 Corpus Juris, 526, Section 145.
 

 The courts do not make the vesting of the interest the test. A devise of realty nominally vests in the devisee when the will takes effect, but the courts will
 
 *446
 
 not allow the devisee who murders the testator to retain title. This result is accomplished by holding the devise invalid. On the other hand the heir who murders the ancestor is allowed to take by many courts. The latter cases are, however, grounded upon the inability of the court to insert in the statute of descent what is not there.
 

 The difference between rights under a contract and those arising wholly by statute is of interest and value; but it may be said that Section 9648, General Code, fixes a right similar to that of an heir under the statute of descent. A careful reading of that section, however, will make plain the dissimilarity. Its provisions merely authorize the account and prescribe that it “shall be payable to any one or more of such survivors or survivor or order notwithstanding such death or incapacity.” As was asserted in
 
 Cleveland Trust Co.
 
 v.
 
 Scobie, Admr.,
 
 114 Ohio St., 241, 151 N. E., 373, 48 A. L. R., 182, the rights of depositors in a joint survivorship bank account arise out of the contract of deposit. The statute itself legalizes such an account but creates no succession. By inheritance the estate is cast upon the heir; by the contract of deposit the exclusive right to withdraw the funds passes to the survivor unless defeated by his own act. Upon the death of the ancestor, the heir has a vested interest in the estate inherited; by the death of the co-depositor the survivor has an alleged chose in action. The fact that decedent’s administrator has withdrawn and holds the deposit should not give the nephew any additional rights. If no affirmative relief is granted, the amount of the deposit remaining for distribution will be distributed to those entitled to decedent’s estate. It is a mere right to recover on the chose in action upon which the cross-petition is based that would be defeated by the application of the common law maxim that a person may not profit by his own wrong.
 

 To permit the nephew’s guardian to recover would be
 
 *447
 
 to allow him to gain something he did not have before his uncle’s death. Before the act of homicide the nephew had a relative right to the deposit. If he did not withdraw it before the uncle did, he had no right therein. And if both appeared at the bank window and demanded the whole deposit at the same time and persisted in the demand the only recourse would be to divide it. The nephew killed his uncle and made it impossible for the uncle to withdraw the deposit and the nephew now claims his right to withdraw it was made exclusive and absolute in him by his uncle’s murder. In order to prevail and obtain the money the nephew through his guardian brings suit by his cross-petition and to give relief the court must by decree sanction the wrongful act and base its judgment thereon. If the nephew is allowed to retain his so called “vested right” he will have nothing he can possess. It is only by the court’s aid that he can enjoy the profits of his wrongful deed.
 

 It is a natural revulsion that arises on being compelled by judicial decree to assure to a murderer the fruits of his crime and give him sanctuary from civil accountability for his deed. It is always hard to be forced to sacrifice the right for the sake of a syllogism. We are not required to do so in the instant case. Reason and authority sustain the conclusion that the murderer cannot recover the amount of the deposit.
 

 It would seem therefore that the judgment in the trial court was warranted and the judgment of the Court of Appeals should be reversed and the judgments of the Probate Court and Common Pleas Court be affirmed.