No. 32,288

W. C. NOLLER, Administrator of the Estate of Asenath Hammatt, Deceased, *Appellant,* v. THE AETNA LIFE INSURANCE COMPANY and EDWARD D. OSBORN, Administrator c. t. a. of the Last Will and Testament of Daniel C. Hammatt, Deceased, *Appellees.*

(46 P. 2d 22)

Opinion filed June 8, 1935.

*Randal C. Harvey* and *Henry M. Evans,* both of Topeka, for the appellant.

*Bennett R. Wheeler, S. M. Brewster, J. L. Hunt, Margaret McGurnaghan, Ralph M. Hope, John H. Hunt, James E. Smith, E. H. Hatcher, Frank H. McFarland* and *Clayton M. Davis,* all of Topeka, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action on a life insurance policy. The dispute was between the administrator of the estate of a husband and the administrator of the estate of his wife. Judgment was for the administrator of the husband's estate. The plaintiff appeals.

The policy was taken out on the life of Daniel C. Hammatt. The policy provided that upon the death of the insured the amount of

the policy would be payable to his wife if she survived him, and if she did not survive him, then in trust for the benefit of the child, children or the estate of the insured or any one or more of them, in such manner as the trustee should determine. Mr. and Mrs. Hammatt died under circumstances that raise a question as to which one survived. After the death of Mr. Hammatt the Aetna Life Insurance Company, as trustee, took the position that Mrs. Hammatt did not survive her husband. It selected the administrator of the estate of Mr. Hammatt as the proper person to whom the insurance should be paid.

The administrator of the estate of Mrs. Hammatt brought this action on the policy. He claims that Mrs. Hammatt survived her husband. The insurance company denied liability under the policy to the estate of Mrs. Hammatt. The administrator of the estate of Mr. Hammatt answered, claiming that he was entitled to recover the amount of the policy from the company. Upon the conclusion of the evidence a demurrer was interposed by the insurance company. This demurrer was sustained. Judgment was rendered in favor of the administrator of the estate of Mr. Hammatt and against the insurance company.

The insurance company contends that there was no evidence from which the jury could conclude that Mrs. Hammatt survived her husband. The company also contends that if Mrs. Hammatt did survive, the evidence proved she must have killed Hammatt and on this account could not receive the benefits of a policy on Hammatt's life.

The administrator for the estate of Mrs. Hammatt contends that there was ample evidence to establish a *prima facie* case that Mrs. Hammatt survived Hammatt, and that even if the evidence should show that she feloniously killed him it would not bar her from recovery on the policy, because the law does not bar a beneficiary from recovery on a policy for the reason that she feloniously killed the insured, in the absence of a conviction of homicide, and further, that this defense was not pleaded and cannot be first raised on a demurrer to the evidence.

We will consider the question of the sufficiency of the evidence. The evidence as to the death of Mr. and Mrs. Hammatt was all circumstantial. Their bodies were found on a bed in their home on the morning of January 12, 1933. Both had been dead for some time. Both had been shot in the left side of the head with the same

gun. This gun lay on the bed where it could have fallen from the hand of either, but the hand of neither was touching it. Mrs. Hammatt was left-handed. Hammatt was right-handed. They were last seen by their maid just before they retired, about ten minutes past seven the evening before. There was a small amount of blood which had flowed from the head of Hammatt. There had been profuse bleeding from the head of Mrs. Hammatt. A further circumstance in connection with the wound in Mrs. Hammatt's head was that there was about her mouth a considerable amount of froth and bubbles, some of which were referred to as blebs. An expert noted the blood, froth and blebs around the mouth of Mrs. Hammatt and testified that froth is formed by breathing through blood and that blebs are formed by breathing through blood that has commenced to coagulate. He testified that blood will, under normal conditions, commence to coagulate in not less than three minutes. A ballistic expert testified that he examined the bullets that were taken out of the bodies and that the bullet that was in the envelope marked with Hammatt's name was fired first. It should be stated here that there is some question about whether the person who prepared the envelopes was sure he put the right bullet in each envelope, but since on a demurrer the evidence must be given the interpretation most favorable to the party offering it this matter will be treated as though there was no question about that. The gun with which the killing was done was identified as having been owned by Hammatt for at least two years. Both shots were fired from the same gun.

On the night of the tragedy Hammatt came home from the office about 5:15. During dinner he appeared quite distracted and ate very little. Mrs. Hammatt appeared to be unusually happy. They retired to their room about 7:10 and called down for more heat about a quarter of eight. Nothing more was heard from them that night. One of the maids left the house about 8:20 and did not return until morning. The other maid was out from 7:30 to 10:50 in the evening. It will be seen that from 8:20 to 10:50 there was no one known to have been in the house except Mr. and Mrs. Hammatt. About ten o'clock in the evening, two neighbors living across the street testified they heard two noises, each of which sounded to them like a knock on the door. When they went to the door and looked no one was there. These noises were between one and two minutes apart.

Mr. and Mrs. Hammatt were married in December, 1929. Their

married life had apparently been very happy. Hammatt was 52 years old and Mrs. Hammatt was 49 at the time of their death. Hammatt had worked for the Aetna Life Insurance Company for about twenty years. At the time of his death he was state cashier for that company. Mrs. Hammatt had been a stenographer before her marriage. She was a moody and temperamental person. She was somewhat addicted to the use of sedative drugs for headaches and sleeplessness. On occasions prior to her marriage she had taken overdoses. She was very fond of her husband and he of her.

The question of which victim of a common disaster lived the longest is one of fact for the jury. See *Russell v. Hallett,* 23 Kan. 276. The burden of proof is on the plaintiff to prove that Mrs. Hammatt died later than Hammatt. Since there were no known witnesses to the tragedy the only proof available is circumstantial. The trier of the facts must determine the question by inferences drawn from proven facts and circumstances.

In *Railway Co. v. Wood,* 66 Kan. 613, 72 Pac. 215, this court said:

"Circumstantial evidence in a civil case, in order to be sufficient to sustain the verdict of a jury, need not rise to that degree of certainty which will exclude any and every other reasonable hypothesis. The jury are not infrequently called on to decide between two or more theories, and in doing so may exercise their own best judgment in accordance with their oath-bound consciences." (p. 616.)

See, also, *Lane v. Insurance Co.,* 113 Kan. 365, 214 Pac. 92, and cases there cited.

The above is still the rule amply sustained by the authorities.

This case comes here because the trial court sustained a demurrer to the evidence of the plaintiff. In dealing with a demurrer to the evidence in *Travis v. Simpson,* 106 Kan. 323, 187 Pac. 684, this court said:

"The demurrer, however, conceded every inference favorable to the plaintiff that might be drawn from the evidence. Even if some of the testimony tended to contradict plaintiff's claim, it was error to sustain the demurrer." (p. 326.)

This has been said many times. It is a well-established rule.

We will consider the evidence in this case, keeping these two rules in mind. In doing that we must say that if there was any theory upon which the jury might have concluded that Mrs. Hammatt survived, drawing from each proven fact and circumstance the inference most favorable to the contention that she did survive, then the demurrer should have been overruled and the case should have been

submitted to the jury. To this end plaintiff points out the proven fact that the bullet found in the head of Hammatt was fired first. This fact must be considered in connection with the position of his body. He was lying more on his side than on his back with one hand thrown across his chest, with the other at his side, and with the bed clothing pulled about half way up his body but not disarranged. These circumstances are some evidence that Hammatt died instantly and without any struggle between the time the shot which killed him was fired and his actual death. There was also evidence that the bullet which killed Mrs. Hammatt was fired into a less vital part of the brain than was the one that killed Hammatt.

The proven fact to which the jury might give considerable weight was the froth and blebs that had flowed from the mouth of Mrs. Hammatt. There can be no doubt that the froth and blebs were there. As to what caused them we have the testimony of the expert that the froth was caused by breathing through blood; that is, after deceased had started to bleed she kept on breathing for a short time, and that the blebs were caused by breathing through blood after it had started to coagulate, that is, about three or four minutes after the bleeding started. For the purposes of this demurrer we must consider this to be true. Here we have circumstances from which the jury might conclude that more than three or four minutes elapsed between the firing of the shot into the brain of Mrs. Hammatt and her death. Add to this the evidence of the neighbors about the noises, like shots about a minute or two apart, which we must consider at this time to be true. When we draw from all these facts and circumstances the inferences that are most favorable to the claim of the plaintiff we have no difficulty in concluding that the jury might have found that Mrs. Hammatt lived four or five minutes longer than Hammatt. If she survived him by a second or two it was sufficient to meet the demands of the plaintiff's case. (See *St. John v. Andrews Institute for Girls*, 102 N. Y. Supp. 808; also, *Robson v. Lyford*, 228 Mass. 318, 117 N. E. 621.)

It must be remembered that the plaintiff did not have the burden of proving that the tragedy happened in any particular way, by a murder and suicide or a double suicide or two murders. His only burden was to prove that Mrs. Hammatt was the last one to die.

In this case plaintiff pleaded that Mrs. Hammatt survived. Defendant pleaded that Hammatt survived. The court sustained a demurrer of defendant to the evidence of plaintiff. The journal entry

of judgment gave judgment to the administrator of the estate of Hammatt, who was a defendant, for the full amount of the policy. The effect of this was the same as though the court had made a positive finding that Hammatt survived. The entire matter was one that should have been submitted to the jury under the authorities we have cited heretofore.

Appellee argues that in case the evidence should be held sufficient to submit the question of survivorship to the jury, still it proves that Mrs. Hammatt shot Hammatt. From this he argues that if Mrs. Hammatt shot Hammatt, then she cannot recover on the insurance policy. He places this argument on the common-law rule that where the beneficiary of an insurance policy feloniously kills the insured it is against public policy to permit him to recover on the policy. Authorities are quoted and relied on which tend to sustain this position. The answer to it is twofold. This court is unable to say that the evidence in the record compels the conclusion that Mrs. Hammatt killed Hammatt. That is merely one of the conclusions to which a jury might come after weighing the evidence. It is our duty to draw all the inferences and conclusions from the record that go to sustain the position of plaintiff. When this is done, it is still apparent that the jury might have concluded that the tragedy was the result of each one of the participants committing suicide.

The other answer lies in the law. Situations such as this have been covered in a measure by the passage of R. S. 22-133. That section is as follows:

"Any person who shall hereafter be convicted of killing or of conspiring with another to kill or of procuring to be killed, any other person from whom such person so killing or conspiring to kill or procuring said killing would inherit·the property, real, personal, or mixed, or any part thereof, belonging to such deceased person at the time of death, or who would take said property by deed, will or otherwise, at the death of the deceased, shall be denied all right, interest and estate in or to said property or any part thereof, and the same shall descend and be distributed to such other person or persons as may be entitled thereto by the laws of descent and distribution, as if the person so convicted were dead."

That law was enacted in the session of 1907.

In January, 1907, the case of *McAllister v. Fair*, 72 Kan. 533, 84 Pac. 112, was decided. In that case a husband had killed his wife for the purpose of obtaining her property. This court held since the

statute of descents and distributions provided in plain and unambiguous language that the property of a deceased wife descended to her husband in a case where she left no issue, that the property of the murdered wife went to the husband who had murdered her.

Notice should be taken here of another statute of this state. R. S. 1933 Supp. 40-414 is as follows:

"In case any life insurance company or fraternal benefit society shall have issued or shall hereafter issue any policy or policies of insurance or beneficiary certificates upon the life of an individual and payable at the death of the assured, or in any given number of years, to any person or persons having an insurable interest in the life of the assured, all such policies and their reserves or the present value thereof shall inure to the sole and separate use and benefit of the beneficiaries named therein, and shall be free from the claims of the assured, and shall also be free from the claims of the person or persons effecting such insurance, their creditors and representatives . . ."

The above or a similar provision of the statute has been in force in our state for many years. It is the public policy of our state thus stated in language as plain and unambiguous as the law of descents and distributions that the proceeds of an insurance policy shall go to the beneficiary named in the policy.

Without any doubt R. S. 22-133 was enacted to cure a situation such as that treated in *McAllister v. Fair,* supra. It will be noted that it provides that no one who shall be convicted of killing another person from whom they would inherit any property or would take property by deed, will or otherwise, shall take such property. The words "or otherwise" would apply to a case where the person who did the killing was the beneficiary in an insurance policy.

R. S. 22-133 only bars the person who did the killing when he has been convicted of the crime. Appellee makes the point that it is against public policy to permit a person to profit by the killing of another. It is the public policy of this state, as announced by the legislature, that such a person shall not take property from the murdered person in any manner whatsoever, but that he must be convicted of the crime before he is barred. This is the obvious intention of the legislature in enacting the various statutes to which reference has been made.

In *Hogg v. Whitham,* 120 Kan. 341, 242 Pac. 1021, this court considered a case where the husband had murdered his wife and two days later had committed suicide. A coroner's jury had found that he had murdered his wife. This court held that the husband was

not disqualified from inheritance until he was actually convicted of the crime, although the murder was admitted. This court said:

"Giving the motion for judgment the full force of an admission by defendants that Whitham killed his wife, it does not satisfy the statute. For purpose of certainty, the statute makes it necessary that the disqualifying criminal act be established by conviction, and the only kind of admission which fits into the statutory scheme is admission in open court, in the form of a plea of guilty to an information on which judgment of conviction may be based." (p. 343.)

As was said in *McAllister v. Fair*, supra, it is not the province of the courts to settle the policy of the state with regard to the right of beneficiaries in life insurance policies to the proceeds of the policies. The legislature has covered this field. This court will not make a different rule than the one provided by statute.

Since it will be necessary to try the case again a question as to the admissibility of evidence must be treated. At the trial of the case the plaintiff offered pictures of the bodies of Mr. and Mrs. Hammatt as they lay in bed on the morning of the tragedy. Three of these pictures were excluded. This is not the type of case where such pictures might unnecessarily inflame a jury. The position of the bodies, condition of the bed clothing and the surrounding circumstances are important features of the case. It is difficult to ascertain just what the position of the bodies was when the spoken word only is relied on. In this case it was deemed necessary for this court to send for the record so as to have these pictures available. The record does not disclose any change in the conditions and surroundings sufficient to render these pictures incompetent. They should have been admitted.

The judgment of the trial court is reversed with directions to grant plaintiff a new trial in accordance with the views herein expressed.

HARVEY, J., not participating.