285 F.2d 558
 The CONTINENTAL BANK AND TRUST COMPANY, as Administrator
with Will Annexed of the Estate of Harry R.
Bitzer, deceased, Appellant,
v.
Helen P. MAAG and Margaret E. Hill, Appellees.
 No. 6489.
 United States Court of Appeals Tenth Circuit.
 Dec. 15, 1960.
 
 Shirley P. Jones, Jr., Salt Lake City, Utah (Albert J. Colton of Fabian & Clendenin, Salt Lake City, Utah, was with him on the brief), for appellant.
 George E. Bridwell, Salt Lake City, Utah, for appellees.
 Before BRATTON, PICKETT and BREITENSTEIN, Circuit Judges.
 BREITENSTEIN, Circuit Judge.
 
 
 1
 This is an interpleader action involving the disposition of the proceeds of a life insurance policy in an alleged murder-suicide situation. The Massachusetts Mutual Life Insurance Company, which brought the interpleader, issued a policy of insurance on the life of Wilda P. Bitzer in which her husband, Harry R. Bitzer, was designated as primary beneficiary and which provided that if the primary beneficiary did not survive the insured the proceeds should go to the named secondary beneficiaries Helen P. Maag and Margaret E. Hill, appellees herein. After trial without a jury, the court below found that Harry murdered Wilda and then committed suicide. The appellant, the administrator of the estate of Harry, urges that the evidence is insufficient to sustain the finding that Harry murdered Wilda and hat, even if he did, recovery by his estate is not barred because Utah, by statute,[1] requires conviction to bar recovery and there was no conviction.
 
 
 2
 Late in the afternoon of June 23, 1959, appellee Helen Maag, a sister of Wilda, went to the Bitzer home, entered through the open back door and found the body of Harry. Police officers who were summoned found the body of Wilda on a bed with a bullet hole in the back of her head near the base of the skull. The body of Harry was in the hallway between the bedroom and front room. There was a bullet hold in his right temple. About a foot from his right hand was a .32 caliber revolver containing two fired and four unfired cartridges. There were no blood trails, no evidence of a struggle and nothing to indicate either a breaking into the house or a disturbance of the household effects. An investigation disclosed that the revolver had been purchased by Harry 19 days previously. The handle of the revolver was of such a type that finger prints could not be obtained. No autopsies were performed and no ballistic tests were made. The condition of the bodies showed that death had occurred a number of hours before their discovery. A pathologist testified that in his opinion, based upon a description of the wounds, Wilda died first.
 
 
 3
 Accepting the position of the administrator that a person is presumed innocent of a crime and that this presumption exists in a civil case where the question of whether a person committed a crime is collaterally involved,[2] and yields only to clear and convincing evidence, we conclude that the evidence is sufficient to sustain the findings of the trial court that Harry murdered Wilda and then committed suicide. It is a reasonable conclusion based on substantial evidence. While it is possible to conjure up hypotheses which would produce a different conclusion, none has a reasonable relation to the circumstances. The purchase of the gun by Harry, the location of the wounds, of the bodies and of the gun, the presence of two fired cartridges in the gun, the absence of any evidence of a struggle or disturbance of the household and the total lack of evidence to account otherwise for the deaths all furnish a reasonable and substantial basis for the findings of the trial court. The determination is for the trier of the facts[3] and, as it is not clearly erroneous, will not be disturbed on appeal.[4]
 
 
 4
 The administrator insists that, even though Harry murdered Wilda and then committed suicide, recovery is not barred because of Utah Code Ann. 74-3-22 (1953), which provides:
 
 
 5
 'No person finally convicted of feloniously causing the death of another shall take or receive any property or benefit by succession, will, or otherwise, directly or indirectly, by reason of the death of such person; but all property of the deceased and all rights conditioned upon his death shall vest and be determined the same as if the person convicted were dead.'
 
 
 6
 The contention is that by this statute a conviction is required to bar the right to take and here conviction is impossible because of the suicide of Harry.
 
 
 7
 We are concerned here with rights to the proceeds of a life insurance policy. This is not a case involving the right to inherit or the right to take by will. Whatever problems there are with respect to the right of a slayer to take by will or inheritance from his victim are not before us.[5] In New York Mutual Life Insurance Company v. Armstrong, 117 U.S. 591, 600, 6 S.Ct. 877, 881, 29 L.Ed. 997, it was said that:
 
 
 8
 'It would be a reproach to the jurisprudence of the country, if one could recover insurance money payable on the death of a party whose life he had feloniously taken. As well might he recover insurance money upon a building that he had wilfully fired.'
 
 
 9
 Following this decision the courts have adopted the view, except in instances involving controlling statutory provisions, that when a beneficiary murders the insured he may not collect the policy proceeds.[6] As we see the Utah statute, it does not change the rule. It pertains to succession by will or inheritance.[7] It is not a part of the insurance laws of that state and our attention is directed to no Utah statute which relates to insurance and which would affect the disposition of the issue here presented.
 
 
 10
 An insurance policy is a commercial contract and will not be enforced contrary to the public policy of the state affected. The rights, duties and obligations arising under or in connection with an insurance policy are governed by the laws of contract, not the laws of wills or inheritance. Enforcement of a contract is denied to a defrauder. From the standpoint of public morality there is an even greater reason to deny it to a murderer or his representative.
 
 
 11
 The administrator relies on Noller v. Aetna Life Ins. Co., 142 Kan. 35, 46 P.2d 22. That was a murder-suicide case in a state having a statute similar to Utah and the holding was that in the absence of a conviction of the slayer her administrator could take the policy proceeds. The Kansas court, after saying that the policy of that state with respect to descent and distribution was controlled by statutory law which the court was powerless to change, went on to say that a Kansas statute, R.S.1933 Supp. 40-414, providing that life insurance policies inure 'to the sole and separate use and benefit of the beneficiaries named therein'[8] was likewise an expression of public policy binding on the courts. Utah has no such statute.
 
 
 12
 There is no Utah decision bearing on the issue here presented. It is not for us to say that Utah, by the enactment of the statute involved, intended to repudiate the rule that a murderer and those claiming under him may not recover on a life insurance policy covering the life of the victim.
 
 
 13
 One further point should be mentioned. No claim is asserted by any one on behalf of the estate of Wilda. The rule recognized in many jurisdictions is that the policy proceeds, in situations such as the case at bar, go to the estate of the deceased. Others hold that under a policy containing named alternate or secondary beneficiaries the proceeds go to them.[9] It should be noted that in the instant case the primary beneficiary is dead. In the circumstances here presented, the secondary beneficiaries are entitled to the policy proceeds.
 
 
 14
 Affirmed.
 
 
 
 [1]
 Uath Code Ann. 74-3-22 (1953)
 
 
 [2]
 British America Assur. Co. of Toronto, Canada v. Bowen, 10 Cir., 134 F.2d 256, 259
 
 
 [3]
 Dick v. New York Life Insurance Co., 359 U.S. 437, 447, 79 S.Ct. 921, 3 L.Ed.2d 935
 
 
 [4]
 Cf. Prudential Ins. Co. of America v. Carlson, 10 Cir., 126 F.2d 607, 611, wherein this court affirmed a finding of a trial court that death was accidental
 
 
 [5]
 For a discussion of these problems see Wade, Acquisition of Property by Wilfully Killing Another-- A Statutory Solution, 49 Harv.L.Rev. 715 et seq
 
 
 [6]
 Wade, supra, p. 742, n. 85, says that the cases on this point are so numerous that he makes no attempt to cite them. See also Restatement of the Law, Restitution, 189, p. 775; 6 Williston, Contracts, 1750, p. 4959 (Rev. ed. 1938); 46 C.J.S. Insurance 1171, p. 57; and annotations in 7 A.L.R. 828, 27 A.L.R. 1521, 70 A.L.R. 1539, and 91 A.L.R. 1486. This court has recognized the rule in Metropolitan Life Ins. Co. v. Banion, 10 Cir., 86 F.2d 886, 889, a case arising in Wyoming
 
 
 [7]
 The statute appears in the Utah Code under the title 'Wills and Successions.'
 
 
 [8]
 46 P.2d 26
 
 
 [9]
 Beck v. West Coast Life Ins. Co., 38 Cal.2d 643, 241 P.2d 544, 26 A.L.R.2d 979