WADSWORTH, EXR., *v.* SIEK.

[Cite as Wadsworth v. Siek (1970), 23 Ohio Misc. 112.]

(No. 744839—Decided January 21, 1970.)

Probate Division, Common Pleas Court of Cuyahoga County.

*Messrs. Lograsso & Longley,* for plaintiff.
*Messrs. Hyland & Hyland,* for defendant Siek.
*Mr. William F. Manlove,* for defendant legatees and beneficiaries.
*Mr. Richard W. Schwartz,* for guardian ad litem and trustee for suit.

ANDREWS, Chief Referee. Plaintiff is the executor under the will of Rosaline V. Siek, formerly Rosaline V. Westlake, who died on December 13, 1967, and whose will was admitted to probate on December 18, 1967.

The will was executed on May 19, 1967, and gave one fourth of her entire estate to her mother, Florence Shipman, and one fourth to her brother, Edward Ernest Slocombe. The rest and residue of her estate was given to five named nieces and nephews, in equal shares. Further reference to the will is unnecessary at this time.

On September 28, 1967, Rosaline Westlake married defendant John J. Siek. No children were born of this marriage.

Plaintiff's petition for a declaratory judgment alleges

that on or about November 25, 1967, defendant John J. Siek "did so assault and physically beat his spouse, Rosaline V. Siek; that as a direct and proximate result thereof, she * * * died on December 13, 1967." This allegation is neither expressly admitted nor denied in defendant John Siek's answer.

It is further alleged that subsequent to the homicide, defendant Siek was indicted for murder in the first degree under the criminal law of Ohio, and that pursuant thereto, he was permitted to and did plead guilty in the Court of Common Pleas of Cuyahoga County, Ohio, of the lesser offense of manslaughter in the first degree, Section 2901.06, Revised Code; and that he was adjudged guilty thereof and sentenced to the Ohio State Penitentiary. He is presently confined in the Chillicothe Correctional Institution.

Defendant Siek admits that he was indicted for first degree murder and that he was convicted of first degree manslaughter and sentenced as alleged.

Defendant Siek, who, as we have seen, was not named in his wife's will, elected to take under the law, namely, Section 2105.06, Revised Code, the statute of descent and distribution. This section is modified by Section 2107.39, Revised Code (the election statute), which limits the electing spouse to one half of the net estate.

We are thus faced with the following question: Is a husband who has been adjudged guilty of first degree manslaughter in the death of his wife entitled to the statutory share of a surviving spouse in his wife's estate?

Our starting point logically, though not chronologically, is Section 2105.19, Revised Code, the pertinent part of which reads:

"No person finally adjudged guilty * * * of *murder in the first or second degree*, shall inherit or take any part of the real or personal estate of the person killed. * * * With respect to inheritance from or participation under the will of the person killed, such person shall be considered as though he had preceded in death the person killed." (Emphasis added.)

As already observed, defendant John J. Siek was not adjudged guilty of either degree of murder, but only of manslaughter in the first degree, an offense not included in the statute.

The statute, in substantially the same language, became effective on January 1, 1932, as Section 10503-17, General Code.

Prior to the adoption of the statute, Ohio case law permitted a murderer to inherit from his victim. The basic case is *Deem* v. *Millikin* (1892), 6 Ohio Circuit Court 357, 3 Ohio Circuit Decisions 491, affirmed "on the reasoning of" the court below, in 53 Ohio St. 668 (1895).

In *Deem* v. *Millikin, supra,* a son murdered his mother, and was convicted and hanged. After his mother's death and before his hanging, the son executed mortgages on certain real estate which his mother owned at the time of her death. The brothers and sisters of the deceased woman contended that by reason of the murder, the real estate did not descend to the son. The Court of Common Pleas held in favor of the mortgagees, and this judgment was affirmed.

The syllabus states:

"The statute of descents provides in clear terms that where one dies intestate and seized in fee of lands, they shall descend and pass to the children of such intestate; and the courts cannot, upon considerations of policy, so interpret the statute so as to exclude from the inheritance one who murders such intestate."

The court was of the opinion that to hold otherwise would amount to legislating an exception into the statute of descent, thereby usurping the prerogative of the legislature.

As Judge Shauck, who wrote the opinion, said:

"* * * when the Legislature * * * speaks in clear language upon a question of policy, it becomes the judicial tribunals to remain silent." 6 Ohio Cir. Ct., at 360.

Although in *Deem* v. *Millikin* the murderer did not live to obtain the property for himself, the point of the decision is that, in the absence of a statute to the contrary, a murderer is entitled to inherit from his victim,

and the case is regarded as an authority for that proposition. *E. g.*, Ames, Can a Murderer Acquire Title by his Crime and Keep It?, 45 Am. L. Reg. 225, 228 (1897); 5 Scott, Trusts (3d Ed. 1967), Section 492, pp. 3497 and 3498, note; Annotation, Felonious killing of ancestor as affecting intestate succession, 39 A. L. R. 2d 477, 483 (1955); *Demos* v. *Freemas* (App. 1938), 26 Ohio Law Abs. 601 (husband killed wife).

In *Demos* v. *Freemas, supra,* the court remarked that the judgment in *Deem* v. *Millikin, supra,* has not, in any subsequent Ohio case, been criticized, modified, or reversed. See also *Alston* v. *Alston* (1964), 4 Ohio App. 2d 270, recognizing that this was the Ohio rule before the passage of what is now Section 2105.19, Revised Code.

To cite all or even a substantial number of the decisions in accord with the Ohio view would unreasonably lengthen this opinion and will not be attempted, although subsequently I will refer to text material containing many citations representing this view and the other views on the subject.

The case of *McAllister* v. *Fair* (1906), 72 Kan. 533, 84 Pac. 112, is especially illuminating in explaining the reasoning behind this view. In that case a husband who murdered his wife was nevertheless allowed to inherit from her estate. The court said in part:

"The argument that a literal interpretation of the statute would, in effect, encourage crime and contravene public policy is no reason why the court should disregard a plain statutory provision, nor justify it in determining the policy of the state upon the question. The right to determine what is the best policy for the people is in the Legislature, and courts cannot assume that they have a wisdom superior to that of the Legislature, and proceed to inject into a statute a clause which, in their opinion, would be more in consonance with good morals or accomplish better justice than the rule declared by the Legislature. * * * The statute makes nearness of relationship to the decedent, and not the character or conduct of the heir, the controlling factor as to the right of inheritance. Besides,

the penalties for felonious homicides are definitely prescribed in another statute, and the loss of the inheritable quality or the forfeiture of an estate is not among them. If the court should hold that the loss of heirship * * * was a consequence of Brandt's crime, it would have to ignore the legislative rule governing the descent of property, and would, in effect, impose a punishment for his crime in addition to that prescribed by the only body authorized to declare penalties for violations of law." 84 Pac. at 113.

See also, as helpful in understanding the reasons for the rule: *Owens* v. *Owens* (1888), 100 N. C. 240, 6 S. E. 794 (no longer the law in North Carolina); *Carpenter's Estate* (1895), 170 Pa. 203, 32 Atl. 637 (changed by statute).

The Ohio view has often been said to represent the weight of authority, in the absence, of course, of a statute precluding inheritance by a murderer. *E. g.* Atkinson, Wills (2d Ed. 1953), Section 37 (despite fact that it seems shocking to allow a murderer to inherit); 1 Woerner, American Law of Administration (3d Ed. 1923), Section 64 a, p. 189; *Bauman* v. *Hogue* (1953), 160 Ohio St. 296.

The two other views held by various courts need merely be mentioned, not dwelt upon, for Ohio has not adopted either of them.

Under one view, a murderer cannot inherit from his victim. In general, the thought here goes back to the common-law maxim that one shall not profit by his own wrong, and that statutes of descent and distribution must be read in the light thereof. It is inconceivable, argue the "sponsors" of this doctrine, that the Legislature could have intended to allow a murderer to inherit. The "leading case" appears to be *Riggs* v. *Palmer* (1889), 115 N. Y. 506, 22 N. E. 188. Although it concerned a devise rather than an inheritance, it has been considered as an authority in both situations. See also, among other cases, *Weaver* v. *Hollis* (1945), 247 Ala. 57, 22 So. 2d 525 (husband who murdered wife not allowed to inherit from her estate).

The third rule, adopted by a number of courts and endorsed by legal scholars, is that in the absence of a statute

otherwise providing, the legal title passes to the murderer, but he is chargeable as constructive trustee. See 5 Scott, Trusts (3rd Ed. 1967), Section 492, pp. 3495-3498.

As Professor Scott says:

"By imposing a constructive trust upon the murderer, the court is not making an exception to the provisions of the statutes, but is merely compelling the murderer to surrender the profits of his crime and thus preventing his unjust enrichment." *Id.* at p. 3496.

For discussion and criticism of the three rules, together with many citations of cases, see 5 Scott, *supra*, Section 492; Ames, Can a Murderer Acquire Title by His Crime and Keep It?, 45 Am. L. Reg. 225 (1897); 4 Pomeroy, Equity Jurisprudence (5th Ed. 1941), Section 1054d; Reppy, The Slayer's Bounty—History of Problem in Anglo-American Law, 19 N. Y. U. L. Q. Rev. 229 (1942); Vanneman, The Constructive Trust: A Neglected Remedy in Ohio, 10 U. Cin. L. Rev. 366, 386-397 (1936); Annotation, Felonious killing of ancestor as affecting intestate succession, 39 A. L. R. 2d 477 (1955). These represent only a small part of the material on the subject.

In his article, cited in the preceding paragraph, Professor Vanneman, speaking of the rule adopted in Ohio and a number of other states, points out that if those courts had imposed a constructive trust upon the murderer in such cases as justice required, there would have been no need for legislation on the subject. Vanneman, *supra*, at p. 391.

Since, however, the constructive trust theory was not adopted by those courts, and since public sentiment did not regard with favor the decisions enabling the murderer to inherit his victim's property, it was natural that the legislatures should have been importuned to meet the problem. See Atkinson, Wills (2d Ed. 1953), Section 37, p. 155. As a result, more than half of the states now have statutes dealing with the subject. 5 Scott, Trusts (3d Ed. 1967), Section 492.1.

As previously noted, the Ohio statute, Section 2105.19, Revised Code, provides that no person finally adjudged

guilty of murder in the first or second degree shall inherit or take any part of the estate of his victim. However, defendant John J. Siek was not adjudged guilty of murder, but only of first degree manslaughter. That he was *indicted* for murder in the first degree is immaterial under the statute.

In the absence of a statutory provision precluding defendant Siek from inheriting, Ohio case law will govern. As we have seen, this case law allows even a *murderer* to inherit.

There appear to be no Ohio cases dealing directly with the effect of the statute on a person adjudged guilty of manslaughter; but there are Ohio cases holding *or stating* that the statute means what it says, *i. e.*, that the person must be adjudged guilty of murder in the first or second degree in order to be precluded from inheriting. *Demos* v. *Freemas* (App. 1938), 26 Ohio Law Abs. 601; *Harrison* v. *Hillegas* (Prob. Ct. 1939), 28 Ohio Law Abs. 404 (statute not applicable where killer committed suicide before conviction or where conviction was of a lesser degree than first or second degree murder); *Winters National Bank & Trust Co.* v. *Shields* (Prob. Ct. 1939), 29 Ohio Law Abs. 193 (killer adjudged insane before trial).

The cases outside Ohio hold that under a statute like ours, a person convicted of manslaughter is not precluded from inheriting from the estate of his victim. *In re Kirby's Estate* (1912), 162 Cal. 91, 121 P. 370 (Right of inheritance is controlled by Legislature and does not depend upon ideas of court or counsel as to natural right and justice); *In re Lysholm's Estate* (1947), 79 Cal. App. 2d 467, 179 P. 2d 833 (husband and wife); *Strickland* v. *Wysowatcky* (1952), 128 Colo. 221, 250 P. 2d 199 (husband and wife); *Bird* v. *Plunkett* (1953), 139 Conn. 491, 95 A. 2d 71 (husband and wife); *Moore's Estate* (1943), 50 Pa. D. & C. 183 (husband and wife); see Atkinson, Wills (2d Ed. 1953), Section 37, p. 155; Vanneman, The Constructive Trust: A Neglected Remedy in Ohio, 10 U. Cin. L. Rev. 366, 390-391 (1936). By contrast, consider a statute providing that any person who shall *kill* another shall be precluded from in-

heriting from his victim. See *Conner* v. *Holbert* (Tenn. App. 1961), 354 S. W. 2d 809, *cert. den.* (1961).

I have considered the possibility of holding that Section 2105.19, Revised Code, indicates a change in policy by the Legislature, whereby no felonious killer, *in any degree*, shall be permitted to inherit from his victim. But such a decision would be directly contrary to the provisions of the statute. Had the Legislature wished to include a person adjudged guilty of manslaughter, it could easily have done so, and it may do so in the future by amending the statute.

Whether the omission by the Legislature was intentional or inadvertent, the fact is that manslaughter *was* omitted, and this court has no right to "amend" the statute by adding it.

First degree manslaughter, although a felony, is much less serious than murder. It lacks the deliberate and premeditated malice of first degree murder and the malice of second degree murder. It consists of voluntary manslaughter, which is an unlawful and intentional killing under the influence of a sudden passion or heat of blood produced by an adequate provocation; or involuntary manslaughter, which is an unintentional killing while in the commission of an unlawful act. See Sections 2901.01, 2901.05 and 2901.06, Revised Code; Baldwin's Ohio Criminal Law (6th Ed. 1969), Text Section 29.12.

We have no right to regard defendant John J. Siek as a murderer. He has been convicted only of manslaughter in the first degree. Whether the manslaughter was voluntary or involuntary is not a matter of record. Despite the tragic circumstances of this case, I must conclude that under the present law of Ohio, defendant John J. Siek is entitled to one half of his wife's net estate.

*Conclusions of Law*

1. Defendant Jack J. Siek (referred to throughout the petition and this report and opinion as John J. Siek), having been convicted of first degree manslaughter only, and having elected, as surviving spouse, to take under Section 2105.06, Revised Code, is legally entitled as sur-

viving spouse to take by way of inheritance one half of the net estate of the decedent, Rosaline V. Siek.

2. The remaining one half of the net estate shall descend and be distributed in the proportions and to the beneficiaries set forth in Items I, II, III, and IV of decedent's will, namely:

(a) One fourth of the said one half to Florence Shipman, mother of the testatrix, absolutely and in fee simple, as per Item I of the will;

(b) One fourth of the said one half to Edward Ernest Slocombe, brother of the testatrix, absolutely and in fee simple, as per Item II of the will;

(c) One tenth of the said one half to Barbara Lee Slocombe Micholski, niece of the testatrix, as per Item III of the will;

(d) One tenth of the said one half to Lawrence Edward Slocombe, nephew of the testatrix, as per Item III of the will;

(e) One tenth of the said one half to Diana Lee Slocombe Gambos, niece of the testatrix, as per Item III of the will;

(f) One tenth of the said one half to Edward Ernest Slocombe, in trust and as trustee for Michael Edward Slocombe, a minor, nephew of the testatrix, as per Items III and IV of the will;

(g) One tenth of the said one half to Edward Ernest Slocombe, in trust and as trustee for Marian Lee Slocombe, a minor, niece of the testatrix, as per Items III and IV of the will.

*Judgment accordingly.*