Mary Frances ROSENBERGER, Plaintiff,

v.

NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY, Defendant,
Don A. Rosenberger, Intervening Defendant.

No. T-2034.

United States District Court
D. Kansas.

Sept. 9, 1959.

Harlow Preston and Charles Rooney, Sr. (of Rooney & Rooney), Topeka, Kan., for plaintiff.

Philip E. Buzick (of Webb, Oman, McClure, Buzick & Waugh), Topeka, Kan., for defendant.

Robert J. Roth (of Hershberger, Patterson, Jones & Thompson), Wichita, Kan., for intervening defendant.

STANLEY, District Judge.

This is an action to recover on six insurance policies which the defendant insurer had issued on the life of plaintiff's husband. Plaintiff was designated as the principal beneficiary in each of the policies. The complaint alleges that plaintiff's husband died in 1957 and that the plaintiff was arrested and tried on a charge of having caused the death, that trial resulting in a verdict of "guilty of manslaughter in the fourth degree contrary to Section 21–419 of the General Statutes of Kansas, 1949." *

The son of the decedent, Don A. Rosenberger, has intervened and in his answer asserts that as the contingent beneficiary under the policies he is entitled to the proceeds thereof. He bases his claim on his interpretation of Section 59–513 of the General Statutes of Kansas, which provides:

> "No person who shall be convicted of feloniously killing, or procuring the killing of, another person shall inherit or take by will or otherwise from such other person any portion of his estate."

It is the intervenor's contention that the plaintiff in this action, the primary beneficiary under the policies concerned, is barred by the above statute from recovering the proceeds and that the contingent beneficiary therefore succeeds to them.

The insurance company has filed its answer and a counterclaim for interpleader. The insurance company admits that the proceeds on the policies of insurance are due and owing; disclaims any interest in or claim to the proceeds and asserts that because of the conflicting claims it runs the risk of multiple liability.

The children of Don A. Rosenberger, minors, have been made parties to the action because they had been designated by the insured as second contingent beneficiaries in the event of the deaths of the direct beneficiary and the first contingent beneficiary.

The plaintiff, the insurance company and the intervenor, each has filed a motion for summary judgment.

The question first raised is whether the plaintiff was "convicted of feloniously

---

* "21–419. *Manslaughter in the fourth degree.* The involuntary killing of another by a weapon, or by means neither cruel nor unusual, in the heat of passion, in any cases other than justifiable homicide, shall be deemed manslaughter in the fourth degree."

killing" her husband so as to be barred by the statute, G.S. 59–513, from the benefits of the insurance policies.

The Kansas statute is applicable to insurance contracts so as to prevent one convicted of feloniously killing the insured from taking as a beneficiary. See Noller v. Aetna Life Ins. Co., 1935, 142 Kan. 35, 46 P.2d 22.

█ The plaintiff admits that she was convicted of a felony when she was tried for the killing of her husband. [See State v. Bowser, 1942, 155 Kan. 723, 129 P.2d 268, which holds that a conviction for manslaughter in the fourth degree is a conviction of a felony.] It is the plaintiff's contention, however, that she is not barred by the statute for the reason that the killing was done without criminal intent and that the statute is not applicable to an unintentional killing. The intervening defendant contends that the statute intends to prohibit a person from taking property from another who was killed under circumstances which render the conviction for the killing a felony.

The Supreme Court of Kansas has, as the plaintiff contends, defined the word "feloniously" as referring to intent to commit a crime, and as the terms were used in the cases cited such definition would be appropriate. In State v. Douglas, 1894, 53 Kan. 669, 37 P. 172, the information charged that the assault had been made "unlawfully and feloniously" and the court found that the information was not rendered defective by the use of such language, that as used there the word "feloniously" meant with intent to commit a crime. And in Guffey v. Continental Casualty Co., 1921, 109 Kan. 61, 197 P. 1098, in defining the term "feloniously taking" as used in the robbery statute, the court determined that it meant a taking with intent to deprive permanently. It is obvious from the many definitions attributed to the word "feloniously" that the manner in which a court defines it in one instance will not control the definition to be applied in a different situation. For definitions see, 36 C.J.S. Feloniously p. 633.

What was the intent of the legislature when it enacted Section 59–513? Obviously, the legislature intended to give force to the rule of the common law that no man shall be permitted to profit by his own wrongful act. In McAllister v. Fair, 1906, 72 Kan. 533, 84 P. 112, 113, 3 L.R.A.,N.S., 726, the court said:

" * * * That any one should be given property as the result of his crime is abhorrent to the mind of every right-thinking person, and is a strong reason why the lawmakers, in fixing the rules of inheritance and prescribing punishment for felonious homicide, should provide that no person should inherit property from one whose life he has feloniously taken. * * *"

The McAllister decision, which upheld the right of a convicted murderer to take by inheritance the property of his victim, undoubtedly brought about the enactment by the Kansas legislature of the predecessor to G.S. 59–513 (Ch. 193, Laws of 1907). The 1907 statute provided that any killing was sufficient to bar the one guilty of the killing from taking any property from the victim or his estate. In 1939, the legislature enacted the present statute wherein the word "feloniously" was added to describe the nature of the killing which would work to so bar the convicted party.

To adopt the interpretation for which the intervening defendant contends (i. e., bar by conviction of killing under circumstances such as to render the killing a felony) would be to prohibit those so convicted from taking although they had no intention or desire to actually kill or even harm the insured. The injustice of such interpretation was illustrated by Judge Tuttle in Metropolitan Life Ins. Co. v. McDavid, D.C.E.D.Mich.1941, 39 F.Supp. 228, 231, when he said:

" * * * (L)et us assume that some villain had ravished a neighbor's daughter and the parents of the daughter deliberately planned to take the life of the villain, they armed themselves with weapons and went to the place where the villain

was then living, for the deliberate purpose of killing him, that all of the facts and circumstances were such that if either one of the parents had killed the villain they would have been guilty of murder, but the wife, being a poor shot and excited, missed the villain and killed her husband. Under the law of Michigan, the wife would be guilty of murder. * * "

Under Kansas law such a wife would be guilty of murder (G.S. 21–401) and, as the intervenor would have the statute read, would be barred by G.S. 59–513 from receiving any of the insurance proceeds from policies on her husband's life. Certainly, as Judge Tuttle then said of a wife in this predicament:

" * * * (s)he should· not be barred from receiving benefits which she otherwise would receive from life insurance on the life of her husband. *The reason she should recover would be because she did not intend to kill her husband.* No cases have been found which hold that a person is barred from receiving the benefits under a life insurance policy or under a will, or by inheritance, unless he killed and intended to kill the person from whom he was to receive the benefits. In other words, *as far as the law has ever gone is to prevent the recovery of benefits which would not have become due and payable except for the intentional taking of the life of the benefactor.*" (Emphasis supplied.)

A search of the authorities fails to reveal any case where a court in considering a similar statute has adopted as a test the classification of the killing as felony or misdemeanor. The test most generally adopted by the courts is that of intention to cause the death, or as it is often stated, the feloniousness of the act causing the death. 1 Appleman, Ins. L. & P. § 384; 29 Am.Jur., Insurance § 1310; 46 C.J.S. Insurance § 1171. The "intent" or "willfulness" test would clearly coincide with the intent of the legislature when it enacted into statutory law what had been the common-law rule.

It is true that the Kansas Supreme Court has held that one convicted of manslaughter in the third degree was barred by the provisions of the statute which preceded G.S. 59–513. Hamblin v. Marchant, 1918, 103 Kan. 508, 175 P. 678, 6 A.L.R. 1403. However, at the time the Hamblin case was decided the statute then made *any* conviction of killing a bar, and under that statute one convicted of negligent homicide would have been barred. The Hamblin case thus would not be authority in this case which must be decided under the provisions of the current statute.

Since the intent of the legislature in enacting the statute must have been to give effect to the common-law rule, to interpret "feloniously killing" as encompassing only those who have been convicted of intentional killing would seem to be in line with that rule. If the statute were to be strictly construed, one convicted of negligent homicide would also be barred, a result clearly not intended by the legislature. The rule is meant to apply to those wrongdoers who intentionally cause the wrong and not to those who may have been negligent.

However, a determination that the statute bars only those who have killed. another intentionally does not mean that plaintiff's motion for summary judgment must be granted. A genuine issue of material fact remains. The judgment rendered in the criminal trial does not preclude re-litigation of the question of intent. Taylor v. United States, D.C.W.D.Ark.1953, 113 F.Supp. 143. The prevailing view is that a conviction for a criminal offense may be received as evidence, persuasive but not conclusive, of the facts upon which it was based. Annotation, 18 A.L.R.2d 1287.

A second issue is presented by the motions—as to the effect of an agreement which includes an assignment by the plaintiff to the intervening defendant of her rights to the proceeds of the insurance policies.

It is not disputed that an agreement was entered into between the plaintiff,

her then attorneys, and the intervening defendant, a copy of which is attached to the pleadings. In substance the agreement provides that the intervening defendant relinquish any claims which he might be able to assert against certain property that had been owned by the plaintiff and her deceased husband as joint tenants; that he would discharge a mortgage debt amounting to $2,500.54, which existed on his property; and that he would also pay a certain sum of money to the plaintiff less an amount equal to the interest paid by him on the mortgage debt. Plaintiff in turn agreed to assign and transfer to the intervening defendant all of her interest in the estate of the deceased and her rights and claims to the proceeds of the insurance policies. Each of the parties agreed to execute and deliver the necessary assignments and other documents which might be necessary to give effect to the agreement, and the promises of the parties were to be fulfilled within sixty days from the date of the agreement.

It is the contention of the plaintiff that there was a failure of consideration with respect to the agreement; that the agreement was a preliminary one requiring completion or execution some sixty days later, which was not completed or executed by her; that plaintiff cannot be bound by the agreement as there "is no forfeiture of penalty clause for failure"; and that she signed the agreement after being ill-advised by her then attorneys as to the law.

In an affidavit of one of the attorneys representing the plaintiff at the time the agreement was executed it is stated that plaintiff was advised that under Kansas law it was possible that she might be barred from inheriting or receiving any of the property of the deceased or the insurance proceeds; that after plaintiff was so informed and after negotiations with the intervening defendant the above agreement was signed on June 28, 1958.

Plaintiff, in an affidavit, states that at the time the agreement was executed she was incarcerated in the Industrial Farm for Women at Lansing, Kansas, and that she was advised by her counsel (affiant in the preceding paragraph) that "under the law in Kansas it was his considered judgment and opinion that I could not inherit or receive insurance benefits from my deceased husband, and relying upon his opinion I executed the same."

At the time the agreement was executed, June 28, 1958, the Kansas law had become settled (January 25, 1958) that one joint tenant who was convicted of feloniously killing the other was not precluded by G.S. 59–513 from succeeding to the entire interest. In re Estate of Foster, 1958, 182 Kan. 315, 320 P.2d 855. It could well be argued that there would be a failure of consideration had the relinquishment by the intervening defendant of any claim to this property been the only consideration which moved to the plaintiff. However, further consideration is stated in the agreement as having passed from the intervening defendant to the plaintiff. It cannot be said as a matter of law therefore that there was a failure of consideration. Clearly, there is some doubt as to whether plaintiff may recover the insurance proceeds or take the remainder of the estate of the deceased. By the agreement, plaintiff was relinquishing her uncertain rights to recover a larger sum in return for the present benefits which she would receive from the payments to be made by the intervening defendant. See 12 Am.Jur., Contracts § 81.

Plaintiff also maintains that she cannot be bound by the agreement since "there is no forfeiture or penalty clause for failure." To constitute a binding agreement, it is not essential that the agreement contain any provisions relative to liquidated damages or penalties to be paid in the event of non-performance. Nor does the fact that performance of the promises was to be accomplished some sixty days following the date of the agreement relegate it to the category of negotiations to enter into a contract at a later date. Nor does the fact that plaintiff entered into the agreement following advice given her by her counsel render the agreement void or

unenforceable. There is nothing now before the court to indicate that the intervening defendant was attempting to defraud the plaintiff or to work in collusion with her then counsel to obtain the proceeds of the insurance policies. The affidavit of plaintiff's counsel shows that she had been advised of the possibility of not recovering on the policies. It also shows that she was advised that "extensive litigation would ensue if her claim were to be asserted." Plaintiff was not required to rely upon her counsel's advice in this matter but could freely have obtained other advice. She chose to abide by the advice given and should not now be heard to complain. I cannot hold as a matter of law that the agreement of the plaintiff to assign the benefits of the insurance to the intervening defendant is invalid. Neither do I feel that I can say that there remains no genuine issue of fact as to the circumstances surrounding the execution of the assignment and the negotiations leading thereto.

In the insurance company's motion for summary judgment on its counterclaim for interpleader it requests discharge from any liability on the insurance policies involved in this action and reasonable attorney's fees be allowed. The insurance company is a mere stakeholder and can contribute nothing toward resolution · of the issues between the plaintiff and the other parties. Its counterclaim for interpleader was necessarily and properly filed, and no genuine issue exists as to its rights and liabilities. It should be discharged from any and all liability arising out of or based on the policies involved, except to pay the proceeds of such policies to the party or parties ultimately adjudged to be entitled thereto.

Out of the proceeds of such policies, and before making the payment indicated, the defendant shall be authorized to reimburse itself for marshal's fees necessarily advanced and to pay to its attorneys, for their services herein, a reasonable fee to be determined by the court at a separate hearing.

For the reasons stated, the motion of the defendant for summary judgment will be granted and the motions of the plaintiff and the intervening defendant for summary judgment will each be denied.

Counsel will prepare and submit an order in accordance with this opinion.