Charles Leonard **DOWDELL**, Donald R. Winship, as Administrator of the Estate of Roberta Matilda Dowdell, Deceased, Appellants (Defendants below), and the Equitable Life Assurance Society of the United States (Defendant below),

v.

**R. W. BELL** and Sindet Bell, as Guardians of Amber, Valorie and Caryn Dowdell, Minors, Appellees (Plaintiffs below).

Charles Leonard **DOWDELL**, Donald R. Winship, as Administrator of the Estate of Roberta Matilda Dowdell, Deceased, Appellants (Defendants below), and Bankers Union Life Insurance Company (Defendant below),

v.

**R. W. BELL** and Sindet Bell, as Guardians of Amber, Valorie and Caryn Dowdell, Minors, Appellees (Plaintiffs below).

Nos. 3848, 3849.

Supreme Court of Wyoming.

Nov. 19, 1970.

Ernest Wilkerson, Casper, for appellant Charles Leonard Dowdell.

Donald R. Winship of Everett, Everett & Winship, Casper, for appellant Donald R. Winship.

Burgess, Kennedy & Davis and Richard M. Davis, Jr., Sheridan, for appellees.

Before GRAY, C. J., and McINTYRE, PARKER, and McEWAN, JJ.

Mr. Justice PARKER delivered the opinion of the court.

This litigation[1] was initiated to determine the rights of different parties to insurance

---

1. There were originally two suits, which were combined for trial and for purposes of this opinion will be treated as one.

policies on the life of deceased, Roberta Dowdell. The guardians of her three minor children brought the actions against the insurance companies, the administrator of her estate, and the husband, who after having been charged with the second-degree murder of his wife, had pleaded guilty to manslaughter and served a term in the penitentiary therefor. The complaints contained identical allegations that Roberta Dowdell's life was brought to an untimely end by the felonious act of Charles Leonard Dowdell. These allegations were denied by Dowdell. The two insurance companies admitted certain liability, paying moneys into court, which left the following issues:

1. Was the designated beneficiary of the insurance policies, Charles Leonard Dowdell, barred from receiving the proceeds by the provisions of § 2–46, W.S.1957:

"No person, who feloniously takes * * the life of another, shall inherit from said person, or take by devise or legacy from such deceased person, any portion of his or her estate; and no beneficiary of any policy of life or accident insurance * * payable upon the death of any person, who in like manner takes * * * the life of another, shall take the proceeds of such policy * * * but * * * all benefits that would accrue to any such person upon the death of the person whose life is thus taken, shall become subject to distribution among the other heirs of such deceased person according to the rules of descent and distribution * * *."

2. If he was so barred, should the proceeds of the policies be paid to the administrator of the deceased or to the guardians of the children, who were contingent beneficiaries of the policies?

The litigation was resolved in the trial court after the parties had agreed that the cause would be submitted to the court upon their briefs, without the taking of testimony or argument of counsel, and had entered a stipulation, which aside from reciting the Dowdell's marriage, the birth of their children, the issuance of the insurance policies, and the willingness of the companies to pay certain amounts thereon, stated:

"3. Charles Leonard Dowdell was arrested and charged with second degree murder, and on November 28, 1967, a preliminary hearing was held on the charge of second degree murder before Justice of the Peace Alice Burridge, Natrona County, Wyoming, and at the conclusions of the said hearing, Charles Leonard Dowdell was bound over to the District Court for trial, a proceedings by information being filed December 1, 1967, by the County and Prosecuting Attorney of the County of Natrona, State of Wyoming.

"4. That on December 1, 1967, the information charging murder was amended to charge that Leonard Dowdell did 'willfully and unlawfully and feloniously kill Roberta Dowdell, a human being, then and there in being, involuntarily but in the commission of some unlawful act or acts' to which information Dowdell pled guilty. That such amended charge is manslaughter as defined in Wyoming Statute 6–58, 1957.

"5. That on January 18, 1968, a hearing as to sentence was held before the Honorable Robert Forrister, Judge, at the conclusion of which hearing Charles Leonard Dowdell was sentenced to serve not less than one year and not more than two years in the Wyoming State Penitentiary at Rawlins, Carbon County, Wyoming."

The judgment held that by virtue of the manslaughter conviction Dowdell was precluded from taking the proceeds of the policies, which should be paid to the guardians of the children, the rationale of the court as to the proceeds being expressed in its memorandum opinion, "I am disposed to follow the majority rule * * *. The obvious intention of the insured was that if her husband could not receive the insurance, it should go to the secondary in-

sured named in the policy. I doubt very much that Section 2–46 of the 1957 Statutes was intended to interfere with or nullify such a contract provision."

The same questions as those presented at the trial level are before us here.

### Rights of Dowdell

Dowdell quotes § 6–58, W.S.1957:

"Whoever unlawfully kills any human being without malice, expressed or implied, either voluntarily, upon a sudden heat of passion, or involuntarily, but in the commission of some unlawful act, or by any culpable neglect or criminal carelessness, is guilty of manslaughter, and shall be imprisoned in the penitentiary not more than twenty years."

He then argues that involuntary manslaughter by its nature and definition is an *unintentional* killing of another person, and that even though involuntary manslaughter is a felony as this term is defined in § 6–2, W.S.1957, the proscription contained in § 2–46 does not automatically apply.

Counsel for the administrator makes no response to Dowdell's argument, apparently *assuming* him to have been precluded by the provisions of § 2–46 from taking the proceeds of the policies. The guardians of the children concede the possible ambiguity in the homicide information and argue the willful and felonious taking of assured's life to have precluded Dowdell from entitlement to the proceeds of the insurance entirely on the basis that the proscription statute uses the word "feloniously" and under the statutory definition manslaughter is a felony. Such contention by reliance on comparative definitions of words which are not truly analogous avoids coming to grips with the real problem and cannot be accepted.

Historically, in the absence of statute, the various jurisdictions of this country have, in accordance with New York Mutual Life Insurance Company v. Armstrong, 117 U.S. 591, 600, 6 S.Ct. 877, 29 L.Ed. 997, held [a beneficiary who has intentionally and feloniously caused the death of the insured may not collect the insurance proceeds.] Annotation, 27 A.L.R.3d 794, 798; 49 Harv.L.Rev. 715, 717. As was noted in Metropolitan Life Ins. Co. v. Banion, 10 Cir., 86 F.2d 886, 889, it "seems quite clear that * * * [§ 2–46] was enacted as a codification of the common law." It is true that the word "intentionally" is not employed in our statute. However, the background of interpretation in the field convinces us that such is the only reasonable meaning which can be given.

In Travelers Insurance Company v. Thompson, 281 Minn. 547, 163 N.W.2d 289, 296, certiorari denied, 395 U.S. 161, 89 S.Ct. 1647, 23 L.Ed.2d 175, where the statute in germane portion[2] was similar to § 2–46, the court said it was "meant to apply to those wrongdoers who intentionally cause the wrong and not to those who may have been negligent." In that opinion, reference was made to Rosenberger v. Northwestern Mutual Life Insurance Company, D.Kan., 176 F.Supp. 379, 182 F.Supp. 633, which dealt with a woman who had been convicted of involuntary manslaughter, the court holding that whether she had a criminal intent which precluded her from recovering under § 59–513, G.S.Kan.1949,[3] insurance proceeds presented a genuine issue of material fact. It was there observed, 176 F.Supp. at 382, after discussing the definitions of "feloniously" as had been employed by the Supreme Court of Kansas, that the manner in which a court defines "feloniously" in one instance will not control the definition to be applied in a dif-

**2.** "No person who feloniously takes * * * the life of another shall inherit from such person or receive any interest in the estate of the decedent * * *. No beneficiary of any policy of insurance * * * payable upon the death * * * of any person, who in like manner takes * * * the life upon which such policy

is issued * * * shall take the proceeds of such policy * * *."

**3.** "No person who shall be convicted of feloniously killing * * * another person shall inherit or take by will or otherwise from such other person any portion of his estate."

ferent situation and that with reference to the enactment of § 59–513:

"* * * Obviously, the legislature intended to give force to the rule of the common law that no man shall be permitted to profit by his own wrongful act. * * *

* * * * * *

"To adopt the interpretation for which the intervening defendant contends (i. e., bar by conviction of killing under circumstances such as to render the killing a felony) would be to prohibit those so convicted from taking although they had no intention or desire to actually kill or even harm the insured. * * *"

To the same effect is Hatcher v. Aetna Life Ins. Co., D.Or., 105 F.Supp. 808, 810–811;[4]

"Plaintiff's act, which I have adjudged to be manslaughter, would not have forfeited her rights to her husband's insurance by the decisions preceding the era of statutes. Only one who slayed intentionally and wrongfully was barred.

"Does the statute compel a different result? Because plaintiff committed a statutory felony, was her conduct 'felonious', within the meaning of the disinheritance and forfeiture statute? On questions like these non-lawyers despair of us.

"The question can be approached historically; it can be approached semantically. After reflection, I have concluded to decide it functionally. * * *

"Would the Oregon courts hold that a son whose reckless driving caused his parents' death, could not inherit from the parents? I think not. Would the Oregon courts hold that a wife, whose negligent driving of the family automobile caused her husband's death, forfeited her claim as beneficiary under her husband's life insurance policies? I feel sure they would not rule that way.

"I hold then, that plaintiff's homicide of her husband, though wrongful, and a felony under the Oregon Criminal Code, did not constitute 'felonious taking' of her husband's life, within the meaning of the Disinheritance and Forfeiture statute."

Although not otherwise relevant to the instant case, the court in Metropolitan Life Ins. Co. v. McDavid, E.D.Mich., 39 F.Supp. 228, 231, presented a graphic example of what might happen under the automatic cutting off of the rights of one convicted of a killing under circumstances such as to render homicide a felony.

■ While it appears that Dowdell unlawfully caused the death of his wife, there was nothing before the court to show the killing was intentional, which circumstance—under our interpretation of the meaning of the word "feloniously"—was essential to any determination that his rights were forfeited. This aspect having been bypassed, the parties in the interests of justice should be permitted to try said issue. Accordingly, the judgment is reversed and the cause remanded for further proceedings consistent with the views herein expressed.

### Relative Rights of Deceased's Heirs and Contingent Beneficiaries of Insurance Policies

Under our disposition of the appeal, there is no need for immediacy in resolving the respective rights of the guardians who represent the contingent beneficiaries as against the administrator of the estate. However, the matter is squarely before us, has been fully argued, and a determination of that controversy now would, if the husband should not ultimately prevail,

4. The Oregon statute provided: "No person who feloniously takes * * * the life of another shall inherit from such person, or receive any interest whatsoever in the estate of the decedent as surviving spouse, or take by devise or legacy from such deceased person any portion of his or her estate; and no beneficiary of any policy of insurance * * * payable upon the death * * * of any person who in like manner takes * * * the life upon which such policy or certificate is issued * * * shall take the proceeds * * *."

prevent unnecessary appearances and expense to the remaining party whose legal claim should ultimately be held invalid. We, therefore, direct our attention to that aspect of the argument.

It is the position of the guardians that under the majority rule, where the obvious intent of the insured is expressed in his insurance contract by the designation of those he wished to take in the event the primary beneficiary was precluded, his intent should be given effect. They point out that all three minor children were contingent beneficiaries of the Equitable Life Assurance policy and that one of them, Amber, was the contingent beneficiary of the Bankers policy, and insist that the administrator's claim is made for the sole purpose of subjecting the funds to the expenses of administration.

█ While a number of states, perhaps the majority, which have no express provision for insurance proceeds, hold that when a primary beneficiary is barred the proceeds should be paid to the contingent beneficiary,[5] § 2–46 clearly prevents such disposition by its provision that "all benefits that would accrue to any such person upon the death of the person whose life is thus taken, shall become subject to distribution among the other heirs of such deceased person according to the rules of descent and distribution." The argument that the conditions of the insurance contract prevail is altered by the rule pronounced in Application of Hagood, Wyo., 356 P.2d 135, 138:[6]

"* * * It is well settled that laws which subsist at the time and place of making of a contract, and where it is to be performed, enter into and become a part of it as though expressly referred to and incorporated in its terms. * *"

That holding does not, of itself, completely solve the present question, but we are impressed with the views of Metropolitan Life Ins. Co. v. Banion, 10 Cir., 86 F.2d 886, 889, where the, point in issue was whether the cause of action rested in the administrator or directly in the heirs, and the court in holding the action by the administrator proper said:

"It seems quite clear that this statute [the predecessor of § 2–46] was enacted as a codification of the common law; the provision as to distribution by the administrator to the heirs is in harmony with section 57–236, Wyo.Rev.Stat.1931 [the predecessor of, and as applied to this case substantially similar to, § 26.1–332, W.S. 1957, C. 1967], which exempts life insurance money from the claims of creditors of the insured. The phrase 'subject to distribution' is one commonly used in connection with the administration of estates; if the intent of the legislature was to vest the cause of action directly in the heirs, the language used is an awkward and inapposite means of expressing a simple thought. * * *"

We think the views there expressed are applicable and that in the instant situation the administrator should prevail, provided the policies were issued in this jurisdiction, and subject of course, to the statutory exemptions.

Reversed and remanded.

---

5. In certain jurisdictions, the legislature has by statute provided specific directions for the contingency existing here, e. g., § 112.515, Or.R.S.: "Proceeds payable to * * * the slayer as beneficiary * * shall be paid to the secondary beneficiary, or if there is no secondary beneficiary, to the personal representative of the decedent's estate * * *."

6. The times and places of the issuance of the insurance policies in this case do not appear in the record.