THE TRAVELERS INSURANCE COMPANY v.
T. EUGENE THOMPSON AND OTHERS.
CONTINENTAL CASUALTY COMPANY v. SAME.
TIME INSURANCE COMPANY v. SAME.
T. EUGENE THOMPSON v. GENERAL ACCIDENT
FIRE & LIFE ASSURANCE CORPORATION, LTD.
EDWARD ERNEST NELSON, AN UNDERWRITER AT
LLOYD'S LONDON, v. T. EUGENE THOMPSON.
ZURICH INSURANCE COMPANY v. SAME.*

163 N. W. (2d) 289.

October 25, 1968—Nos. 40,903, 40,904, 40,905, 40,906, 40,907, 40,908.

*Certified to U.S. Supreme Court March 13, 1969.

*Richard E. Kyle, Samuel L. Hanson, Michael J. Baglio,* and *Briggs & Morgan,* for appellant Travelers.

*James H. Geraghty* and *Altman, Geraghty, Leonard & Mulally,* for appellants Continental, Time, and General Accident.

*Meagher, Geer, Markham & Anderson, O. C. Adamson II,* and *A. W. Nelson,* for appellant Lloyd's London.

*Peter F. Walstad* and *Mordaunt, Walstad, Cousineau & McGuire,* for appellant Zurich.

*Allen I. Saeks* and *Benedict S. Deinard,* for respondent.

MURPHY, JUSTICE.

This is an appeal from a denial by the Ramsey County District Court of appellant insurance companies' motion for summary judgment. Appellants sought declaratory relief with regard to their liabilities on a number of insurance policies purchased by respondent, T. Eugene Thompson, on the life of his deceased wife, whom he was convicted of murdering. The district court certified as important and doubtful the question of whether Thompson's 1963 conviction of first-degree murder of his wife is conclusive so as to bar his claim as a beneficiary of the insurance policies.[1] The

---

[1] Rule 103.03(i), Rules of Civil Appellate Procedure.

facts in the prior criminal case are set out in detail in our opinion affirming Thompson's conviction.[2] Only those facts which are germane to a determination of the present civil action will be related here.

On the morning of March 6, 1963, Carol Thompson was beaten and stabbed to death in her St. Paul home. Evidence collected at the scene of the crime led to the arrest in Arizona of one Dick W. C. Anderson. Anderson confessed to the murder and implicated several other parties, among whom were Norman Mastrian and respondent. Anderson's testimony at the trial was that he was approached by Mastrian on March 3, 1963, and asked "if he was interested in killing a woman"; Anderson also testified that when questioned Mastrian admitted that "insurance was involved."[3] Richard Sharp, one of the men implicated in the conspiracy, testified that Mastrian had earlier offered the job to him, describing the victim as "a churchgoing woman with four children" and "heavily insured."[4]

The facts disclosed are that between February 1962 and January 1963 Thompson purchased nine term policies, totaling $1,055,000, on his wife's life. The policies were to expire on dates ranging from March 15, 1963, to April 9, 1967.[5] In each of the policies Thompson was the named beneficiary. His explanations for acquiring this unusual amount of term insurance were (1) that since his wife would acquire in the event of his death $460,000 of insurance on his life and could expect to inherit $500,000 should her father die, he (Thompson) should be able to anticipate an equal amount in the event of his wife's death;[6] and (2) that "he had a premonition that his wife was going to have a tragic accident on February 8 or 9, 1963."[7]

There was testimony at the criminal trial to the effect that Thompson had been intimate with his secretary over a 2-year period from 1960 and

---

[2] State v. Thompson, 273 Minn. 1, 139 N. W. (2d) 490, certiorari denied, 385 U. S. 817, 87 S. Ct. 39, 17 L. ed. (2d) 56.

[3] 273 Minn. 8, 9, 139 N. W. (2d) 497, 498.

[4] 273 Minn. 7, 8, 139 N. W. (2d) 497.

[5] See chart, 273 Minn. 39, 139 N. W. (2d) 517.

[6] 273 Minn. 6, 139 N. W. (2d) 496.

[7] Id.

that he had offered to marry her. The testimony showed, however, that his offers were rejected and that his secretary married another man in 1962. It appears that she last heard from Thompson at Christmas time in 1962, more than 3 months before the murder of Thompson's wife. The record fairly establishes that the overriding motive for the murder was to secure the proceeds of the insurance policies rather than the affair with the secretary.

■ It is agreed that Minn. St. 525.87 prevents one who has "feloniously" taken or caused the death of another from profiting from such wrongful act by inheriting from such person's estate or being a beneficiary of an insurance policy on the victim's life.[8] The core question here is whether a criminal conviction may be considered in a subsequent civil proceeding for the purpose of establishing the truth of the facts upon which the conviction was based. This question must be considered in the light of our prior decision which reviewed at length the issues and procedures involved in the criminal prosecution which resulted in respondent's conviction. It must be recognized that the facts set forth in that decision gave rise to both the criminal and the civil actions with which we are here concerned. The facts and issues in both actions are identical. The issues in the criminal case have been decided, reviewed, and affirmed on appeal. Appellant insurance companies contend that in the posture of these pro-

---

[8] Minn. St. 525.87 provides: "No person who feloniously takes or causes or procures another so to take the life of another shall inherit from such person or receive any interest in the estate of the decedent, or take by devise or bequest from him any portion of his estate. No beneficiary of any policy of insurance, or certificate of membership issued by any benevolent association or organizations, payable upon the death or disability of any person, who in like manner takes or causes or procures to be taken the life upon which such policy or certificate is issued, or who causes or procures a disability of such person, shall take the proceeds of such policy or certificate; provided, however, that an insurance company shall be discharged of all liability under a policy issued by it upon payment of the proceeds in accordance with the terms thereof, unless before such payment the company shall have knowledge that such beneficiary has taken or procured to be taken the life upon which such policy or certificate is issued, or that such beneficiary has caused or procured a disability of the person upon whose life such policy or certificate is issued."

ceedings principles of "estoppel by judgment" or "collateral estoppel" require that the judgment in the criminal case be conclusive as to the issues raised in the civil case. Respondent contends, on the other hand, that because of the absence of the essential element of mutuality (the parties in the criminal proceedings not being the same as those in the civil proceedings) principles of estoppel may not be applied.

Collateral estoppel is a limited form of res judicata whereby a former judgment is conclusive in a later suit between the same parties or their privies as to determinative issues finally decided in the former suit. In Gollner v. Cram, 258 Minn. 8, 10, 102 N. W. (2d) 521, 523, 83 A. L. R. (2d) 971, 974, we said:

"The doctrine of collateral estoppel (also referred to as estoppel by verdict) applies where it affirmatively appears that the issue presented has already been litigated in a prior suit between the same parties even though based upon a different cause of action. Unlike the situation where a former judgment acts as an absolute bar, it is an indispensable prerequisite to collateral estoppel that the issue involved be actually litigated and determined in the former suit."

The principle of collateral estoppel has been expressed in varying terms in Brooks Realty, Inc. v. Aetna Ins. Co. 268 Minn. 122, 128 N. W. (2d) 151; Anderson v. Mikel Drilling Co. 257 Minn. 487, 102 N. W. (2d) 293; Lustik v. Rankila, 269 Minn. 515, 131 N. W. (2d) 741. See, Annotation, 83 A. L. R. (2d) 977, 986; 10 Dunnell, Dig. (3 ed.) §§ 5161, 5162.

The general common-law rule has been that a criminal judgment is not admissible as evidence in a civil action to establish a fact determined in the criminal action nor does it constitute a bar to a subsequent civil action based upon the offense of which the party stands convicted and that the judgment of conviction is not admissible in evidence for that purpose. Wahl v. Walton, 30 Minn. 506, 16 N. W. 397; Annotations, 31 A. L. R. 261, 18 A. L. R. (2d) 1287, and 42 A. L. R. (2d) 634. It has been held that a conviction precludes neither the bringing of a civil action by a convicted person nor an attempt to prove that he is innocent of the offense. 30A Am. Jur., Judgments, § 474; 50 C. J. S., Judgments,

§ 754. In addition to the absence of mutuality in the second suit, other considerations which have influenced courts in so holding are that the judgment may not be conclusive of issues which might have been litigated and determined in the initial action but which were not; failure or inadequacy of legal representation; the drawing of a wrong inference or misapplication of law which might give rise to an erroneous result; and the rule of evidence that the judgment in a criminal case is nothing more than the opinion of 12 jurors and, consequently, hearsay.

It is important to note that an exception to this rule has developed in situations where the convicted defendant attempts by subsequent civil litigation to profit from his own crime, as where an arsonist seeks to recover insurance proceeds for damage caused by the fire which he was convicted of setting, or where a beneficiary convicted of homicide seeks to recover under the victim's life insurance policy. In such situations courts have approached the problem from the point of view of the particular judgment offered as evidence, and have invoked the doctrine of collateral estoppel where the advantages to be derived from preventing relitigation would not be outweighed by the injustice that might result from foreclosing attack on the prior determination. In the more recent cases where a convicted defendant has sought by civil action to profit from his own wrong, courts have not hesitated to apply the doctrine of collateral estoppel even though the parties to the two actions are not identical. Justification for overlooking the element of mutuality in the subsequent civil case is most often found in the rationale that objections to the application of collateral estoppel are not valid because the criminal conviction necessarily establishes that the requirement of a greater degree of proof has been met and because the party bound by it had every opportunity and incentive to litigate the issue. 1B Moore, Federal Practice (2 ed.) par. 0.418[1]; 65 Harv. L. Rev. 818, 878; 5 Wigmore, Evidence (3 ed.) § 1671a.

Courts have adopted various approaches in considering a judgment of conviction submitted in a subsequent civil action involving the same issues. These authorities reflect a uniform wariness on the part of courts about permitting one whose guilt has been fully determined by proof beyond a reasonable doubt to embarrass the judicial process by prevailing

in a subsequent civil action involving the same facts and thereby to profit from the crime for which he was convicted. It appears that the courts of New York,[9] Alabama,[10] Colorado,[11] and Kentucky[12] have held that a judgment of conviction is admissible as evidence, normally prima facie, of the facts upon which it was based, but that it is not conclusive. Colorado has since adopted a statute changing this rule by specifically providing that the judgment of conviction is itself sufficient to disqualify the convicted heir from receiving property of the decedent through intestate succession.[13] The authorities which we choose to follow, and which control the facts in this case, have held that the judgment of conviction is conclusive in a subsequent civil action and include the jurisdictions of Virginia,[14] Pennsylvania,[15] California,[16] North Carolina,[17] and the United States Courts of Appeals for the Seventh[18] and Eighth Circuits.[19] These holdings have been applied in situations where a convicted defendant attempts to profit by his own wrong in a civil action even in the absence of the element of mutuality in the second suit.

---

[9] See, Schindler v. Royal Ins. Co. 258 N. Y. 310, 179 N. E. 711, 80 A. L. R. 1142.

[10] See, Sovereign Camp W. O. W. v. Gunn, 224 Ala. 444, 140 So. 410; Id. 227 Ala. 400, 150 So. 491; Id. 229 Ala. 508, 158 So. 192; Fidelity-Phenix Fire Ins. Co. v. Murphy, 226 Ala. 226, 146 So. 387; Id. 231 Ala. 680, 166 So. 604.

[11] See, North River Ins. Co. v. Militello, 100 Colo. 343, 67 P. (2d) 625; Id. 104 Colo. 28, 88 P. (2d) 567.

[12] See, Wolff v. Employers Fire Ins. Co. 282 Ky. 824, 140 S. W. (2d) 640, 130 A. L. R. 682.

[13] See, Colo. Rev. Stat. 1963, § 153-2-13.

[14] See, Eagle, Star & British Dominions Ins. Co. v. Heller, 149 Va. 82, 140 S. E. 314, 57 A. L. R. 490.

[15] See, Greifer's Estate, 333 Pa. 278, 5 A. (2d) 118; Mineo v. Eureka Security Fire & Marine Ins. Co. 182 Pa. Super. 75, 125 A. (2d) 612; Kravitz Estate, 418 Pa. 319, 211 A. (2d) 443.

[16] See, Teitelbaum Furs, Inc. v. Dominion Ins. Co. 58 Cal. (2d) 601, 25 Cal. Rptr. 559, 375 P. (2d) 439.

[17] See, Taylor v. Taylor, 257 N. C. 130, 125 S. E. (2d) 373.

[18] See, Austin v. United States (7 Cir.) 125 F. (2d) 816.

[19] See, Connecticut Fire Ins. Co. v. Ferrara (8 Cir.) 277 F. (2d) 388.

The original decision adopting this approach is Eagle, Star & British Dominions Ins. Co. v. Heller, 149 Va. 82, 140 S. E. 314, which was an action on a fire insurance policy brought after the plaintiff had been convicted of having willfully burned the insured property with intent to defraud the insurer. The defense raised was that the conviction was an estoppel to the action. The court recognized that the judgment of acquittal would not have been binding on the insurance company because it would only be a finding that the plaintiff's guilt was not proved beyond a reasonable doubt and because the company was a stranger to the criminal action. With respect to the judgment of conviction, however, the court said (149 Va. 89, 140 S. E. 316):

"* * * We confess our inability to perceive, however, why the accused person himself should not be held either as bound or affected by the result of the prosecution, if adverse to him. He has had his day in court, with the opportunity to produce his witnesses, to examine and cross-examine the witnesses for the prosecution, and to appeal from the judgment. So that the chief reason for holding that the plaintiff in the civil case is not bound by the prosecution fails as to the defendant, who has once litigated the identical question and had it adversely decided, under conditions most favorable to himself—that is, in a prosecution in which he could not have been convicted unless the decisive fact, his guilt, had been shown beyond a reasonable doubt."

The court distinguished prior cases as follows (149 Va. 105, 140 S. E. 321):

"The precedents and the rules of exclusion which have been derived therefrom, which the trial court followed, have generally arisen in cases where one claiming to be injured by the criminal act of another had brought a tort action against the alleged wrongdoer for redress of that injury, most frequently in actions for personal injury—assault and battery. This, however, is not such a case. Here the plaintiff who brings this action has committed the felony, and seeks to recover the fruit of his own crime.

"The rule of exclusion is a shield for the protection of those who have had no opportunity to assert their defense. To apply it here would be to

convert it into a sword in the hands of one who has had such an opportunity, to be used by him for the effectuation of the same fraud which has been established, condemned and punished in the criminal case. If there be a rule which cannot stand the test of reason, it is a bad rule."

An impressive number of courts have followed the same rule, largely prompted by a public policy to discourage the use of courts in proceedings which, as the Virginia and New York courts have said, "would discredit the administration of justice, defy public policy and shock the most unenlightened conscience" and permit a possible result which would "encourage and give support to current thoughtless and carping criticism of legal procedure, and to justify the gibe that the administration of the law is the only remaining legalized lottery." 149 Va. 111, 140 S. E. 323; Schindler v. Royal Ins. Co. 258 N. Y. 310, 313, 179 N. E. 711, 712. See, Austin v. United States (7 Cir.) 125 F. (2d) 816; Teitelbaum Furs, Inc. v. Dominion Ins. Co. 58 Cal. (2d) 601, 25 Cal. Rptr. 559, 375 P. (2d) 439; Connecticut Fire Ins. Co. v. Ferrara (8 Cir.) 277 F. (2d) 388; Fidelity-Phenix Fire Ins. Co. v. Murphy, 226 Ala. 226, 146 So. 387; Kravitz Estate, 418 Pa. 319, 211 A. (2d) 443; Griefer's Estate, 333 Pa. 278, 5 A. (2d) 118; In re Estate of Laspy (Mo.) 409 S. W. (2d) 725; Mineo v. Eureka Security Fire & Marine Ins. Co. 182 Pa. Super. 75, 125 A. (2d) 612; 5 Wigmore, Evidence (3 ed.) § 1671a; 4 Wigmore, Evidence (3 ed.) § 1346a. We agree with appellants that the judgment of conviction in the criminal case is conclusive as to the result of the civil action before us to determine respondent's rights to the proceeds of the insurance policies on the life of his deceased wife. We are constrained to the view that to permit a retrial of the facts and issues already determined in the criminal proceeding would be an imposition on the courts and only tend to embarrass or bring into disrepute the judicial process.

■ It is next contended by respondent that a reasonable interpretation of Minn. St. 525.87 necessarily prevents the court from adopting the rule that a conviction in a given homicide case may in a subsequent civil action be conclusive proof of the facts upon which it is based. This argument derives from language of § 525.87, which states that no person who "feloniously" takes the life of another shall profit from his wrongful act. Respondent points out that statutes of this kind that existed in other

states prior to the enactment of § 525.87,[20] provided that persons who have been "finally convicted" or "convicted of feloniously causing the death of another" shall not profit by the wrongful act. Respondent characterizes the latter as a "conclusive" type of statute as opposed to § 525.87, which is characterized as a "non-conclusive" type of statute. It is argued that because the term "feloniously" includes within its broad classification offenses in which intent may not be an essential element the term may not have the same application in both civil and criminal cases,

[20] Compiled Laws of North Dakota 1913, § 5683. "No person who has been finally convicted of feloniously causing the death of another shall take or receive any property or benefit by succession, will or otherwise, directly or indirectly, by reason of the death of such person, but all property of the deceased and all rights conditioned upon his death shall vest and be determined the same as if the person convicted was dead."

Neb. Rev. Stat. 1913, § 1283. "No person who has been convicted of unlawfully killing another, or of conspiring unlawfully to kill another, shall take all or any portion of the property, real or personal, of the deceased, either by descent and distribution or by will; but the property to which the person so convicted would otherwise have been entitled shall go to the person or persons who would have taken the same if the person so convicted had been dead at the date of the death of the deceased."

Id. § 1284. "No person who has been convicted of unlawfully killing another, or conspiring unlawfully to kill another, shall be entitled to any insurance on the life of the deceased. If the person so convicted is the beneficiary under any policy or policies of life insurance, or beneficial certificate or certificates, such insurance shall go to the person or persons who would have been entitled thereto if the person so convicted had been dead at the date of the death of the deceased."

Kan. Gen. Stat. 1915, § 3856. "Any person who shall hereafter be convicted of killing or of conspiring with another to kill, or of procuring to be killed, any other person from whom such person so killing or conspiring to kill or procuring said killing would inherit the property, real, personal, or mixed, or any part thereof, belonging to such deceased person at the time of death, or who would take said property by deed, will or otherwise, at the death of the deceased, shall be denied all right, interest and estate in or to said property or any part thereof, and the same shall descend and be distributed to such other person or persons as may be entitled thereto by the laws of descent and distribution, as if the person so convicted were dead."

and that if the interpretation suggested by appellants is adopted, one convicted of manslaughter or of criminal negligence resulting in death would necessarily come within the proscription of the statute.

We cannot share respondent's fears that the language of § 525.87 warrants the conclusion suggested. The distinction between the two forms of statute—the one preventing recovery where there is a felonious killing and the other preventing recovery by one who was convicted of a felonious killing—is of little real importance since the determinative question is whether or not the killing was actually felonious. It must be kept in mind that these statutes declare and establish a policy which prohibits a murderer from profiting from a death that he wrongfully caused. It may be fairly assumed that the legislature intended to abrogate our holdings in Wellner v. Eckstein, 105 Minn. 444, 117 N. W. 830, and Gollnik v. Mengel, 112 Minn. 349, 128 N. W. 292. In each case a convicted murderer was held entitled to a share in his victim's property under the statutes of descent and distribution, Gollnik holding that because those statutes were unambiguous the court could not construe them to include an implied exception embodying the equitable principle that a wrongdoer should not be permitted to profit from his own crime. It seems to us that the legislatures enacting both types of statute were motivated by the same intention although they used different words to provide that the wrongdoer may not profit from his own crime. Moreover, it seems reasonable to us that in giving effect to that equitable rule the language used, describing such a wrongdoer as one who "feloniously takes or causes or procures another so to take the life of another," comprehends only those who have been convicted of intentional killing. Anderson v. Grasberg, 247 Minn. 538, 78 N. W. (2d) 450. It does not seem to us that the statute would warrant an interpretation that one convicted of negligent homicide would necessarily be barred from recourse to the courts in a subsequent civil action. The statute is meant to apply to those wrongdoers who intentionally cause the wrong and not to those who may have been negligent. See, Rosenberger v. Northwestern Mutual Life Ins. Co. (D. Kan.) 176 F. Supp. 379; Id. 182 F. Supp. 633.

■ It is next contended by respondent that the judgment of conviction

cannot have conclusive effect in a subsequent civil action because a criminal conviction is no longer in the true sense "final" even after review and affirmance by appellate courts. This argument derives from Fay v. Noia, 372 U. S. 391, 83 S. Ct. 822, 9 L. ed. (2d) 837; Townsend v. Sain, 372 U. S. 293, 83 S. Ct. 745, 9 L. ed. (2d) 770; and Sanders v. United States, 373 U. S. 1, 83 S. Ct. 1068, 10 L. ed. (2d) 148, cases which Mr. Justice Harlan, dissenting, has characterized as a "trilogy of pronouncements" which "relegate to a back seat * * * the principle that there must be some end to litigation." 373 U. S. 23, 83 S. Ct. 1081, 10 L.ed. (2d) 166. This point may be briefly disposed of by observing that the foregoing authorities give to a convicted defendant who has been wrongfully deprived of his liberty in a criminal action the right at any time to have a review of any error growing out of the denial of a basic constitutional right. We do not understand that these holdings suspend operation of well-established rules of res judicata in civil cases. Once it is decided that the effect of the conviction in a subsequent civil case is conclusive, principles of public policy and the interests of litigants require that parties who had a full opportunity to litigate the issues should not be again permitted to reopen and review over and over again the civil aspects of the determination. 30A Am. Jur., Judgments, §§ 373, 326; 10 Dunnell, Dig. (3 ed.) §§ 5159, 5162.

We accordingly view the particular judgment of conviction in the context of the facts and issues found in the original proceedings, which have been fully determined by the trial court and affirmed by this court on appeal. The record of the criminal proceedings fully establishes that respondent had an untrammeled right to fully litigate the issues which are identical to those in the action before us. An examination of the record satisfies us that he had every opportunity and incentive to litigate the issue of his guilt. He was himself an experienced lawyer and was afforded all of the protections which surround the modern-day defendant in a criminal trial. The case was decided against him so as to satisfy the burden of proof beyond a reasonable doubt. Full hearings were accorded respondent in post-trial proceedings preliminary to appeal, and the record of the trial and such proceedings were reviewed by this court in an exhaustive and comprehensive opinion; on application by respondent to the Supreme

Court of the United States, certiorari was denied. It seems to us that under the circumstances the requirement of finality for the application of the principles of res judicata has been fully satisfied. Restatement, Judgments, § 41.

Reversed.